EXHIBIT 2



 CITADEL

September 4, 2014
Taym Moustapha
505 West 37th St., Apt. 3007
New York, NY 10018

Dear Taym,

We are pleased to offer you the opportunity to join Citadel Investment Group (Europe) Limited ("CIGE") as an Execution Trader, based in London and commencing on or about November 17, 2014.

Citadel is a place where exceptional people achieve extraordinary results. We are committed to continuing to attract, develop and retain the brightest talent – people such as you.

The terms of our offer to you are attached and supersede any conversations or other agreements discussed or entered into prior to this date. Changes to the terms and conditions documented in this letter or the attached Employment Terms will only be made through the issuance of a new letter requiring your signature. As an employee of Citadel, you will be eligible to participate in vacation, insurance, and pension benefits as outlined in the accompanying materials.

Our standard pre-employment paperwork is also enclosed. Before you can join us, this paperwork must be completed to our satisfaction and you are also required to produce satisfactory and specific evidence of your eligibility to work in the UK. The specific documentation you should provide is listed in an attachment to this letter (section A). You must also provide us with the personal details set out in Section B of the attachment to this letter. This offer and your continued employment are also contingent upon (i) our receipt of satisfactory results to a standard pre-employment drug screen, (ii) our receipt of satisfactory results to a full background check (which will include reference checks), and (iii) there being no obligations to any third party, including your current or prior employer, that would prohibit or purport to prohibit you from performing any of your duties for CIGE, in each case as determined in CIGE's sole discretion.

Please give us a call if you have any questions about this offer. Your signature below acknowledges that the terms and conditions of this offer are the result of good-faith negotiations between you and Citadel, and you have had the opportunity to consult with counsel of your choice prior to acceptance. We are excited to have you join our team and look forward to your acceptance of this offer by Monday, September 15, 2014, after which time the offer will lapse.

We do not recommend that you give notice of termination to your current employer before we confirm that the aforementioned contingencies have been satisfied.

Yours sincerely,

Steve Atkinson
Chief Operating Officer
Citadel Investment Group (Europe) Limited

120 London Wall
London EC2Y 5ET
United Kingdom                    Company Registration Number 3666898

78

 CITADEL

Citadel Investment Group (Europe) Limited ("CIGE")

**Taym Moustapha**

Employment Terms

The following terms, together with Part B of the CIGE Employee Handbook and the documents in your employment pack constitute your contract of employment with CIGE. Capitalized terms not otherwise defined herein will have the meaning set forth in the Program (defined below).

In each full year of your employment, you will be eligible to participate in such incentive arrangements as CIGE, in its absolute and sole discretion, determines from time to time.  The level of your participation in any such incentive arrangements will be at the sole and absolute discretion of CIGE and will take account of a number of factors which CIGE determines as appropriate.

## Annual Base Salary:                                                                                                  £70,000

This will be your Annual Base Salary for the remainder of 2014 and for 2015.

## Participation Points Related to Performance:                                                              Eligible

As determined by CIGE in its sole discretion, you will be eligible to receive Participation Points based on: (i) your individual performance and demonstration of the characteristics described in the Citadel Leadership Model, (ii) the performance of your business and (iii) Citadel's overall performance. Any award of Participation Points will be earned, valued and paid according to the terms of the relevant employee incentive program and its relevant addenda and any award (collectively, the "Program"). You must be employed and not under notice on the dates described in the Program in order to receive any award of Participation Points and to be issued any Unvested Membership Interest (or Unvested Shares) for a Service Year.

## Relocation Assistance:                                                                                                Eligible

Following your acceptance of this offer, CIGE's relocation vendor will contact you to explain the attached policy and assist you in the relocation process.  Please make all arrangements through your relocation counsellor.  If you need additional assistance, please call Kirk Southern at 44 207 645 9794.

## Continuous Employment:

No employment with a previous employer will count as continuous with your employment with CIGE.

## Working Time:

Given the nature of your duties it is likely that you may be requested to work additional hours which CIGE considers necessary to meet its business needs. This will sometimes make your total weekly hours longer than 48 hours in any week and in some cases longer than 48 hours a week averaged over 17 weeks.  By signing this agreement you accept that your working time including overtime (paid or unpaid) in any reference period may exceed 48 hours in any seven day period and the limit specified in Regulation 4(1) of the Working Time Regulations (the "Regulations").

 CITADEL

In this clause, "working time" means any time during which you are carrying out work on behalf of CIGE, whether or not this takes place on CIGE's premises. This could, for example, include travelling to and attending meetings off CIGE premises, on behalf of CIGE, and relevant training (as defined in the Regulations). However, "working time" does not, for example, include rest breaks, time normally spent travelling to and from work, time taken for medical appointments or your lunch break.

### Termination:

If you wish to resign or if CIGE terminates your employment without Cause either party must give 3 months notice in writing. Notice will not be provided by CIGE where your employment is terminated for Cause (definition attached) or gross misconduct.

### Payment in Lieu of Notice:

Instead of requiring you to work during your notice period (or any remaining part of it) CIGE may (at its discretion) choose to terminate your employment immediately and pay you a sum equivalent to your basic salary (less appropriate PAYE deductions) in respect of the notice period (or the remaining part of it).

### Garden Leave:

During your notice period (or any remaining part of it) CIGE reserves the right to require you to be on Garden Leave which means:

- to remain away from CIGE's premises;
- to work from home;
- to carry out special projects outside the normal scope of your duties; and/or
- not to carry out some or all of your normal duties.

During any period of notice, CIGE may appoint another person to carry out any or all of your duties at any time.

During any period of notice or garden leave, you will receive your base salary and all benefits to which you are entitled; however, you will not be eligible to receive a bonus or an award of Participation Points.

During any period of notice you must:

- continue to comply with your implied duties, including those of good faith and fidelity; and
- continue to comply with the express duties set out in your terms of employment, except those from which you are explicitly released by CIGE.

**⊞⊞ CITADEL**

### Jurisdiction:

Unless otherwise specified, all issues relating to your employment will be subject to the jurisdiction of and determined in accordance with the laws of England and Wales.

For and on behalf of CIGE:

Steve Atkinson
Chief Operating Officer
Citadel Investment Group (Europe) Limited

Accepted by:

**Taym Moustapha**

14/03/2014

Date

**MEMORANDUM**

| To | Taym Moustapha |
|---|---|
| **Date** | 4 December 2017 |
| **Subject** | **Transfer of employment contracts from Citadel Investment Group (Europe) Limited to Citadel Securities (Europe) Limited** |

As part of a corporate reorganisation we have decided to transfer various people, assets and functions which are currently employed, held and carried out by Citadel Investment Group (Europe) Ltd. ("**CIGE**") to Citadel Securities (Europe) Limited ("**CSEL**").

As a result of this, various contracts to which CIGE is a party will be transferred across to CSEL. This includes the contracts of employment of certain employees currently employed by CIGE. This means that, after the transfer, your employment will transfer to CSEL from CIGE. This memo provides you with some initial information about that transfer.

### TUPE

The move from CIGE to CSEL will take place under the Transfer of Undertakings (Protection of Employment) Regulations 2006 (known as TUPE) which protects your employment and the terms and conditions associated with it.

In practice this means the terms and conditions of employment will remain the same and your continuity of service from joining CIGE will be maintained. Apart from the change of your employer there will be no material difference in your employment. However, you may notice some incidental changes, and the letterhead of some correspondence you receive from your employer.

All your working relationships will remain the same and you should not notice any difference in the day-to-day running of the business.

### Timescales

This transfer will take place on 1 January 2018.

Therefore from 1 January 2018, you will become an employee of CSEL.

Moustapha, Taym 114

**Specific information**

In accordance with TUPE, I can inform you that:

1. the transfer will take place from CIGE to CSEL;

2. the transfer will take place on 1 January 2018;

3. the reason for the transfer is our internal corporate reorganization; and

4. the only implication for employees is the change in identity of employer.   There are no changes to terms and conditions of employment or any other measures proposed to be taken in relation to the transfer.

As no changes to terms or other measures are being proposed by either CIGE or CSEL no formal consultation is required.   Consultation is only required under TUPE if any "measures", e.g. any changes to your terms and conditions, are envisaged.

This letter and the attached Frequently Asked Questions ("FAQ") document contain the information that we are required to give you.

If you have any questions please contact Beth McGrath or Donna Rix.

Regards,

Michael Weiner
Deputy General Counsel

Moustapha, Taym 11467

**FAQs**
**TRANSFER FROM CIGE TO CSEL**

**Q.    I have been told that there is a plan to transfer my contract under TUPE. What is "TUPE"?**

A.    TUPE is an abbreviation for the Transfer of Undertakings (Protection of Employment) Regulations 2006.

TUPE applies because, as part of a corporate reorganisation within Citadel it has been decided to transfer certain people who are currently employed by CIGE to CSEL.

TUPE then transfers those employees whose employment contracts are held by CIGE to CSEL. The employees' terms and conditions are protected.

TUPE will apply to transfer the employment of all employees who currently work for CIGE in the UK.

**Q.    Who is Citadel Securities (Europe) Limited?**

A.    Citadel Securities (Europe) Limited is the Citadel affiliate that employs all of the people who provide services exclusively in connection with the Securities business.

**Q.    What do I do if I have queries about my compensation or terms and conditions?**

A.    If you have any query about compensation or your terms and conditions, please raise it as you would normally do with either your line manager or HR. This change of employer to CSEL has no impact on any of your existing compensation or terms.

**Q.    What will CIGE do to communicate with me about these TUPE changes?**

A.    We have already provided you with the required information. These FAQs also provide some more information.

Where operational changes known as "measures" are planned, there may be an obligation to consult with affected employees. This is not applicable in these circumstances.

**Q.    Where will I work after the transfer?**

A.    You will be employed at the same place as before.

**Q.    What happens to my previous service?**

A.    Your continuity of service is protected under TUPE.

This means that your original start date of employment is preserved. Any statutory employment rights which are dependent on length of service will be calculated based on your total length of service, as will any contractual employment rights.

**Q.   Can the new employer change my terms and conditions of service?**

A.   You will transfer on your existing terms and conditions of employment, and no changes are currently planned. CSEL will remain as part of the Citadel group of companies.

**Q.   Will I be issued with a new contract of employment?**

A.   This letter and attached FAQs serve as sufficient notification of the transfer and, as no changes to terms and conditions are taking place, a new contract of employment is not required.

**Q.   How will my salary be affected?**

A.   Your salary will not be affected at all.

**Q.   How will my pension be affected?**

A.   Your pension arrangements will not be affected.

**Q.   How will my benefits be affected?**

A.   Your benefits arrangements will not be affected.

**Q.   I want to apply for a mortgage and have been asked when I started work with my employer.  What will the mortgage reference say?**

A.   Your continuity of service is protected under TUPE so your original start date of employment is preserved.  The letter will confirm your original start date with CIGE.

**Q.   Will there be new staff policies?**

A.   CSEL will continue to use all the existing CIGE policies. There are currently no plans to make any changes to staff policies, although CSEL reserves the right to do so in the future in its sole discretion.

**Q.   Will I still work in the same team?**

A.   Yes.

**Q.   What happens if I don't want to transfer to CSEL as my new employer?**

A.    You are under no obligation to transfer to CSEL as your new employer. However, your contract of employment will automatically transfer to CSEL unless you object in writing in advance.

If you object to the transfer of your employment in writing, under TUPE your employment will come to an end automatically on the date of the transfer (in other words, it will be as if you had resigned without notice).

**Q.    If I transfer will I get notice pay from my old employer?**

A.    No, if you transfer, your contract of employment simply transfers as if it had originally been entered into between you and CSEL.

**Q.    Can CSEL as the new employer refuse to employ me and/or dismiss me?**

A.    You will automatically transfer to CSEL. CSEL cannot refuse to employ you or dismiss you solely because of the transfer.

**Q    What will be different after the transfer?**

A.    You should use the CSEL name if you are asked for the identity of your employer, for example if you need a rental reference or if you apply for a mortgage.  Any formal notifications of changes to your terms and conditions such as salary and benefits changes will be notified to you by CSEL, and if you wish to raise any query about your employment terms it should be addressed to CSEL. If you were to decide to leave you should address any letter of resignation to CSEL.

**Q.    Will I be issued with a P45 form in respect of my employment with CIGE when my employment transfers to CSEL?**

A.    No, CIGE will continue to operate UK payroll and benefits on behalf of CSEL and CSEL will use the same PAYE reference as CIGE.

**Q.    Will I notice any real difference to how I work or to what I need to do in my daily work?**

A.    You should not notice any difference.  We invite you to bring any issues that may arise to the attention of Beth McGrath or Donna Rix so that we can resolve them for you and for others.

We hope that you have found these questions and answers helpful. If you have any other questions please let us know.

Moustapha, Taym 11467

Moustapha, Taym 11465

**CITADEL**

May 18, 2021

Taym Moustapha
147 George Street
Flat 15, W1H 5LB
London

Dear Taym:

Further to our recent discussions concerning your position, we are pleased to offer you the opportunity to transfer your employment from Citadel Securities (Europe) Limited to Citadel Management (Europe) II Limited ("Citadel" or the "Company"), effective May 24, 2021 (the "Effective Date"). Beginning on the Effective Date, you will be an employee of Citadel Management (Europe) II Limited.

In consideration of your transfer, Citadel will make the following adjustments:

**Job Title:**                                                    **Quantitative Trader**

**Terms & Conditions of Transfer:**

Citadel Securities (Europe) Limited hereby assigns, transfers, and conveys to Citadel Management (Europe) II Limited all of its rights to and interests in its employment relationship with you, and all of its associated liabilities and obligations (including any incentive compensation, bonuses, or guaranteed compensation and awards as applicable, which will, for 2021 forward, be paid or awarded by Citadel Management (Europe) II Limited). Citadel Management (Europe) II Limited accepts such assignment and transfer, and, by signing below, you consent to the assignment and transfer.

Your existing terms and conditions of employment (including those related to your compensation and benefits) are assigned and transferred to Citadel Management (Europe) II Limited and will remain in effect unless otherwise modified by these Terms & Conditions of Transfer or a separate written agreement. The period of your employment with Citadel Securities (Europe) Limited will be credited for all purposes, including determining any unpaid bonuses, incentive or retirement benefits or other vesting or eligibility requirements.

These Terms & Conditions of Transfer do not terminate your employment for purposes of any employee incentive program or other agreement, do not trigger the commencement of any applicable Compliance Period or Restricted Period contained therein, nor do these Terms & Conditions of Transfer trigger any rights to termination or severance payments or benefits under any agreement or applicable law. References to Citadel Securities (Europe) Limited, "Citadel" and/or its or their affiliates in such programs and agreements shall include Citadel Management (Europe) II Limited.



As a condition of your transfer you will be required to enter into the attached standard legal documents ("SLDs") with Citadel Management (Europe) II Limited to take effect from the Effective Date, namely a Non-Disclosure Agreement, a Non-Solicitation Agreement, a Non-Compete Agreement, a Supplemental Non-Compete Agreement and a Dispute Resolution Agreement. These will replace your existing SLDs with Citadel Securities (Europe) Limited, which will be of no further effect after the Effective Date.

All of your other employment terms will remain unchanged.

Taym, I wish to thank you again for your past and anticipated future contributions to Citadel. Your efforts are greatly appreciated.

Sincerely,

**Acknowledged and Agreed:**

DocuSigned by:

*Taym Moustapha*   5/20/2021

Steve Atkinson

Chief Operating Officer

EB80230670A6499...

**Taym Moustapha**                **Date**



## CITADEL INVESTMENT GROUP (EUROPE) LIMITED
## NON-COMPETE AGREEMENT

I, __Taymn MOUSTAPHA__ acknowledge, pursuant to this Non-Compete Agreement (this "Agreement"), that Citadel Investment Group (Europe) Limited ("CIGE") and the Citadel Group (individually or collectively, as the case may be, "Citadel") have invested extraordinary amounts of time, effort and resources to developing protectable business interests, including Confidential Information; relationships with Citadel Employees, Citadel Clients and other counterparties; a track record of investment success; a superior reputation and standing in the investment, business and technology communities; and highly valuable goodwill. I also acknowledge that: (a) Citadel takes significant steps to preserve and protect its Confidential Information and other protectable business interests; (b) Citadel's Confidential Information is the key to Citadel's competitive advantage; (c) during the course of my employment with Citadel, I will have access and exposure to Citadel's Confidential Information and other protectable business interests; (d) Citadel's Confidential Information will retain continuing vitality throughout and beyond the Restricted Period (as defined below); (e) if I leave Citadel and work for myself or with another person or entity and engage in any business activity that is identical or similar to any Citadel Business Activities in violation of this Agreement, it would be highly likely, if not inevitable, that I would rely on Citadel's Confidential Information in the course of my work, either consciously or subconsciously; (f) any loss or erosion of Citadel's competitive advantage caused by my engaging in the activities outlined below in this Agreement would have severe and irreparable repercussions on Citadel's business, including the possibility of substantial investment losses for the endowments, pension plans, foundations and other Citadel Clients that entrust Citadel to manage their investment capital and the possibility of harm to the Citadel Clients to whom Citadel provides other services; and (g) it likely will be necessary for me to avoid certain activities for a period of time following the end of my employment with Citadel so that my ability to use or rely upon Citadel's Confidential Information and to otherwise impair Citadel's protectable business interests is diminished.

I agree that this Agreement is necessary to safeguard Citadel's protectable business interests individually and collectively.



I recognize and accept the individual responsibility that I have in the effort to protect and to preserve Citadel's Confidential Information and other protectable business interests. Unless otherwise defined or indicated herein, all capitalized terms in this Agreement shall have the meaning set forth in the Dispute Resolution Procedure (which definitions are expressly incorporated herein).

1.      Non-Competition. During my employment with Citadel, and during the Restricted Period following the end of my employment, or any extension thereof, I agree that I shall not, directly or indirectly, engage in any Competitive Activity.

(a)      "Restricted Period" means the period of 6 months following the end of my employment (regardless of the reason my employment ends). The Restricted Period shall be reduced by one day for each day during the notice period prior to the end of my employment during which, at Citadel's direction, I am not required to carry out any duties. If no notice period is set forth in my offer letter, any compensation letter, or otherwise, the notice period set forth in Citadel's Employee Handbook shall apply.

(b)      Extension of Restricted Period. I agree that if I violate any of the terms of this Paragraph 1, Citadel will be entitled to seek equitable relief including a "springboard injunction".

2.      Restricted Period Payment. The Restricted Period Payment will be a monthly payment of 1/12ᵗʰ of your annual salary as of your last date of employment (subject to such deductions as are required by law), unless Citadel determines that Cause for termination existed, in which case the Restricted Period Payment will be reduced by 75%. I will receive the Restricted Period Payment each month during the Restricted Period (if any), provided that I do not engage in any Competitive Activity. I further acknowledge that the purpose of Restricted Period Payments is to compensate me for not engaging in any Competitive Activity during the Restricted Period (if any). For purposes of clarity, the Restricted Period Payments shall not begin until after the applicable notice period. The Restricted Period Payment is intended to provide a source of income to me during the Restricted Period given that I cannot engage in Competitive Activity during that period. I understand that if I breach this Agreement I will not be entitled to receive any further payments under this provision, whether during the Restricted Period or any extension of the Restricted Period under Paragraph 1(b), but that I will not be released from any continuing or remaining obligations I may have under this Agreement. I further understand that the Restricted Period Payment is not an attempt to quantify or measure the damages that Citadel may suffer if I were to breach this Agreement and shall not serve as a measure of liquidated damages.

3.      Reasonableness of Restrictions. I acknowledge and agree that Citadel engages in Citadel Business Activities on a global basis, including investing in financial instruments traded on exchanges located throughout the world, and on a bilateral basis with counterparties located throughout the world. I understand that it is not necessary to be physically present on such exchanges or with such counterparties in order to engage in such activities. Rather, all that is necessary is the means to communicate with those capable of facilitating such transactions on my behalf. Accordingly, I understand the need for the restrictions contained in this Agreement to be without limitation as to location. I agree that: (a) the scope and duration of the restrictions and limitations described in this Agreement are reasonable and necessary to protect the legitimate business interests of Citadel, even if any provision of Paragraph 1 above may limit my ability to earn a livelihood for some period of time in a business that is identical or similar to any Citadel Business Activities; (b) all restrictions and limitations relating to the period following the end of my employment will apply regardless of the reason my employment ends; and (c) any alleged claims that I may have against Citadel do not excuse my obligations under this Agreement. I also acknowledge that Citadel will not enter into an employment relationship with me unless I agree to such restrictions and limitations.

4.      Notice to Future Employers. During the Restricted Period or any extension thereof pursuant to Paragraph 1(b), I will notify any subsequent employer of my obligations under this Agreement prior to commencing employment.

5.      Notice to Citadel. During the Restricted Period or any extension thereof, I will provide Citadel fourteen (14) days advance notice prior to becoming employed by any person or entity, or engaging in any capacity in any business of any type or form, regardless of whether or not the prospective employer or business is a Competitive Enterprise.

6.      Other Information. This Agreement shall inure to the benefit of any successor or assign of Citadel, whether by merger, consolidation, sale of assets or otherwise. References herein to "Citadel" shall be deemed to include any such successor(s) or assign(s). Each affiliate of CIGE is a third party beneficiary of this Agreement and may enforce CIGE's rights under this Agreement. If a court or arbitration tribunal determines that any provision contained in

this Agreement (including any definition referred to and/or incorporated herein) is unenforceable in any respect, then the effect of such provision will be limited and restricted so as to permit the provision to be enforceable or, if that is not possible, such provision will be removed from this Agreement and the remainder shall stand. In either case, this Agreement shall be interpreted, even if modified, to achieve the full intent expressed, and the other provisions of this Agreement will remain in force and unmodified and will be enforced as written. Because money damages for the breach or threatened breach of my obligations under this Agreement would be inadequate to properly compensate for losses resulting from my breach, Citadel is entitled to injunctive relief (a court order preventing me from doing something), specific performance (a court order compelling me to do something) and other remedies "in equity" for such a breach or threatened breach, without first being obligated to post any bond or to show actual damages. In addition, Citadel may obtain any other remedies available at law, in equity or under this Agreement. The prevailing party in any action related to or based upon this Agreement shall be awarded its reasonable legal fees, arbitrators' fees, experts' fees, costs and litigation expenses from the other party. In the event of any dispute relating to this Agreement, I understand and agree that it will be resolved according to the terms of the Dispute Resolution Procedure, the terms of which are incorporated herein by reference. No change or waiver of this Agreement will be effective unless made in a writing signed by Citadel and me. This Agreement shall be governed by and interpreted in accordance with the laws of England & Wales (without regard to conflict of law principles). To the extent that proceedings in court are permitted by this Agreement or the Dispute Resolution Procedure, Citadel and I both consent to, and submit to, on an exclusive basis, the personal jurisdiction and venue of the courts located in London, England. Citadel and I irrevocably waive any claim that the courts in London, England are an inconvenient forum. I agree to accept service of any court filings and process by delivery to my most current home address on record with Citadel via first class mail, by any nationally recognized overnight delivery provider or by any third party regularly engaged in the business of service of process. This Agreement represents the entire agreement between me and Citadel regarding the matters covered in this Agreement and supersedes any prior agreement between me and Citadel regarding such matters.

I understand that Citadel's employee incentive programs and partnership agreements are separate from and independent of this Agreement and shall apply to me in the manner and at such time as described in the relevant documents separately from and independently of this Agreement, and all Obligations, Compliance Periods and any other terms and conditions set forth and defined in those documents (e.g., non-disclosure of confidential information, non-solicitation, non-competition, etc.) will apply to me separate from and independent of this Agreement. I further understand that (i) Citadel's employee incentive programs and partnership agreements contain different obligations and compliance periods than those set forth herein and (ii) the remedies available to Citadel and the consequences to me for noncompliance differ among this Agreement, the employee incentive programs, and the partnership agreements.

**I have had the opportunity to review this Agreement and to consult with a qualified lawyer prior to signing it, and I voluntarily agree to its terms.** In exchange for good and valuable consideration, including employment or continued employment with Citadel, as the case may be, the sufficiency and receipt of which is hereby acknowledged, Citadel and I agree to all of the provisions of this Agreement.

Citadel Investment Group (Europe) Limited

Taym Moustapha

Lorraine Psaras
Director, Human Resources

Date: M/09/2014

Date: 18/9/14

-2-

91

D1780875

## CITADEL INVESTMENT GROUP (EUROPE) LIMITED
## DISPUTE RESOLUTION PROCEDURE
## (WITH DEFINITIONS FOR EMPLOYMENT AGREEMENTS)

1.      Scope of Agreement. Citadel Investment Group (Europe) Limited ("CIGE") and I, Taym MOUSTAPHA agree that, except as set forth below, (a) all disputes and claims of any nature that I may have against CIGE and any member of the Citadel Group (individually or collectively, as the case may be, "Citadel"), or any of their respective officers, directors, partners, members, employees or agents in their capacity as such, including all statutory, contractual and common law claims (including all employment discrimination claims), and any disputes concerning the validity, enforceability or applicability of this Dispute Resolution Procedure (this "Agreement") to any particular dispute or claim, and (b) all disputes and claims of any nature that Citadel may have against me (in each case, other than those claims which are not subject to this Agreement by virtue of statute or order of the Court) (together a "Claim"), will be submitted exclusively first (except as provided below) to mandatory mediation, which mediation shall be conducted in accordance with the Centre for Effective Dispute Resolution Model Mediation Procedure ("CEDR") from time to time in force. If the parties are unable to agree on a mediator, we shall jointly request that one be appointed by CEDR.

If mediation has been unsuccessful following 4 weeks of the inception of the Claim, the Claim shall be referred to mandatory arbitration in London, England or another agreed-upon location in accordance with the Arbitration Act 1996 (as amended from time to time) and administered by the London Court of International Arbitration under the Arbitration Rules of the London Court of International Arbitration ("Rules") which terms are hereby deemed incorporated. The Claim will be submitted before a panel of three arbitrators. Each party shall be entitled to nominate one arbitrator to sit on the panel, and the nominated arbitrators will seek to agree a chairperson.

Citadel and I agree not to file, institute or maintain any mediation or arbitration other than in accordance with this Agreement. This Agreement and each of the Employment Agreements (defined below) shall inure to the benefit of any successor or assign of Citadel, whether by merger, consolidation, sale of assets or otherwise. References herein to "Citadel" shall be deemed to include any such successor(s) or assign(s). Each member of the Citadel Group and affiliate of CIGE is a third party beneficiary of this Agreement and may enforce CIGE's rights under this Agreement. No change or waiver of this Agreement will be effective unless made in a writing signed by Citadel and me.

2.      Exceptions. (a) I agree that Citadel may elect, at its option, to have any dispute or claim resolved in court, rather than arbitration, in accordance with the terms of this Agreement by providing written notice of its election to me within ten (10) days after the mediation conference; (b) this Agreement does not apply to disputes that are expressly excluded from arbitration by statute; (c) either Citadel or I may seek and obtain from a court any injunctive or equitable relief necessary to maintain (and/or to restore) the status quo or to prevent the possibility of irreversible or irreparable harm pending final resolution of mediation, arbitration or court proceedings, as applicable; (d) Citadel may bring an action in court to compel arbitration under this Agreement; and (e) either party may bring an action in court to enforce an arbitration award. Citadel and I expressly waive any right to a trial by jury on all disputes and claims covered by this Agreement.

3.      Confidentiality/Parties. I agree that the resolution of any disputes with Citadel likely would involve Confidential Information and that it is necessary to resolve such disputes in a non-public forum and/or with the greatest possible confidentiality if in a public forum. Accordingly, I agree that all information regarding the mediation or arbitration proceedings, including any mediation settlement or arbitration award, will not be disclosed by me, any mediator or arbitrator or the LCIA to any third party without the written consent of Citadel. The election by Citadel to have any dispute or claim resolved in court, rather than in arbitration, shall not in any way be treated as an acknowledgement that any information related to that dispute or claim is not confidential. In any court filings, I shall comply with applicable court rules to protect Confidential Information, including filing documents reflecting Confidential Information under seal. No party shall join, and no arbitrator or court may allow any party to join, claims of any other person in a single arbitration or court proceeding, and there will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action without the consent of Citadel. I further agree not to consent to become a member of any class in any proceeding against Citadel. If, without my prior knowledge or consent, I am made a member of a class in any proceeding, I agree to opt out of the class at the first opportunity. Notwithstanding any other clause contained in this Agreement, the preceding three sentences shall not be severable from this Agreement.

4.      Time Limits. Notwithstanding anything to the contrary in any agreement between me and Citadel, including any employee incentive program, equity participation program or similar arrangement, Citadel and I agree that any claim I may have against Citadel (including any discrimination claim, or that Citadel may have against me) must be filed no more than one (1) year after the date on which the claim first arises. Failure to do so will constitute a waiver of claims, and such claims will be barred. Citadel and I waive any statute of limitations to the contrary.

5.      Costs. The prevailing party shall be awarded its costs and expenses, including legal fees, arbitrators' fees, experts' fees and other fees and expenses incurred in connection with the arbitration or litigation.

6.      General. Except as otherwise provided herein, if a court or arbitration tribunal determines that any provision contained in this Agreement (including any definition referred to and/or incorporated herein) is unenforceable in any respect, then the effect of such provision will be limited and restricted so as to permit the provision to be enforceable or, if that is not possible, such provision will be removed from this Agreement and the remainder shall stand. In the event that the dispute or claim involves a written agreement between Citadel and me, a Citadel compensation model or employee incentive program or a partnership vehicle, neither the arbitrator(s) nor the court will have authority to add to, detract from or otherwise modify the agreement, model, program or vehicle provisions other than as expressly set forth in the applicable documents. Should this Agreement conflict with the arbitration provisions of any other agreement that I have with Citadel, or with the terms of any Citadel employee incentive program, the terms of this Agreement will govern. This Agreement supersedes all arbitration provisions contained in any past, present or future application, registration, rule or other document of any self-regulatory organization in which Citadel or I am a member, former member or applicant, or with which Citadel is or I am or either Citadel or I was otherwise associated.

7.      Governing Law/Venue. The terms of this Agreement are incorporated by this reference and made applicable to my Non-Compete Agreement (if applicable), Non-Solicitation Agreement and Non-Disclosure Agreement (collectively, along with this Agreement, the "Employment Agreements"). Unless otherwise specified, this Agreement shall be governed by and interpreted in accordance with the laws of England and Wales (without regard to conflict of law principles). To the extent that proceedings in court are permitted by the Employment Agreements, Citadel and I both consent to, and submit to, on an exclusive basis, the personal jurisdiction and venue of the courts located in London, England (other than an action to enforce an arbitration award, which may be filed in any court of competent jurisdiction). Citadel and I irrevocably waive any claim that the courts in London, England are an inconvenient forum. I agree to accept service of any court filings and process by delivery to my most current home address on record with Citadel via first class mail, by any nationally recognized overnight delivery provider or by any third

party regularly engaged in the business of service of process. This Agreement represents the entire agreement between me and Citadel regarding the matters covered in this Agreement and supersedes any prior agreement between me and Citadel regarding such matters.

8.    Definitions for Employment Agreements. The following definitions apply to the Employment Agreements:

"Cause" means any termination on or following: (i) my conviction (including conviction that results from any plea or plea agreement) of any criminal offence; (ii) the knowing material theft, or the knowing embezzlement or fraud by me or my involvement, either alone or in concert with others, in any scheme or conspiracy to knowingly divert assets from Citadel; (iii) my material or persistent failure to perform my material duties or to comply with Citadel's policies and procedures, if such failure, if it can be cured, is not cured within thirty (30) days after Citadel sends me written notice specifying the nature of such failure; (iv) any knowing or reckless act of material dishonesty by me in connection with the performance of my duties; or (v) the knowing or reckless breach or violation by me of my contractual obligations to Citadel or any law, fiduciary duty or material regulation respecting the business of Citadel.

"Citadel Business Activities" means any of the investment strategies; trading strategies; research and development activities; trading, trade execution, market making and investment activities; asset management activities; advisory activities; technology development, support and licensing activities; customer related activities or any other business activities engaged in by Citadel at any time during my employment or that Citadel proposed or planned to engage in at any time in the twelve (12) month period prior to the termination of my employment with Citadel.

"Citadel Client" means any person or entity that was an investor in any funds sponsored or managed by Citadel or that maintained an account managed or sponsored by Citadel, in each case, at any time during the twelve (12) month period preceding the end of my employment (i) that I knew or had reason to know was an investor in any fund sponsored or managed by Citadel or that maintained an account managed or sponsored by Citadel, and (ii) with whom I had material contact while I was an employee of Citadel. Citadel Client also means any person or entity that was an advisor, consultant or manager of any person or entity referred to in clauses (i) or (ii) of the preceding sentence or that I knew or had reason to know invested the capital of others in any fund or account managed or sponsored by Citadel and with whom I had material contact while I was an employee of Citadel. Citadel Client shall also include (x) any person or entity to whom Citadel provides financial, advisory or technology services, (y) any person or entity who is an order flow provider to Citadel, and (z) any person or entity who is a customer (as such term is commonly understood) of Citadel, in each case, during the twelve (12) month period preceding the end of my employment (1) that I knew or had reason to know was a person or entity so described, and (2) with whom I had material contact while I was an employee of Citadel.

"Citadel Employee" means any person that (i) is a member of Citadel Europe LLP; (ii) is employed, or engaged as an exclusive consultant, by Citadel; or (iii) was a member of Citadel Europe LLP or an employee of, or exclusive consultant to, Citadel, in each case, at any time within the ninety (90) day period immediately preceding the conduct in question and with whom I had material contact while I was an employee of Citadel.

"Citadel Group" means CIGE, its direct or indirect parents (including, without limitation, Citadel LLC), its ultimate holding company and each of their subsidiaries (all as defined in the Companies Act 2006) and any affiliate of one or more of the foregoing entities ("affiliate" means any other corporation, trust, association, unincorporated organization, limited liability company, joint venture, partnership or other entity that either directly or indirectly (including through one or more intermediaries) controls, is controlled by or is under common control with such company). For purposes of this definition, "control" (including, with correlative meanings, the terms "controlling", "controlled by" and "under common control with"), as applied to any person, means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of that person, whether through the ownership of voting securities or by contract or otherwise.

"Competitive Activity" means (i) becoming an employee of a Competitive Enterprise in a capacity where there is a reasonable possibility that I may, intentionally or inadvertently, use or rely upon Confidential Information; or in a capacity that is materially similar to the capacity I was in, where I provide services that are materially similar to the services I provided, or with responsibilities that are materially similar to the responsibilities I had, in each case, during the twelve (12) month period preceding the end of my employment with Citadel; (ii) becoming an advisor or consultant to a Competitive Enterprise in a capacity where there is a reasonable possibility that I may, intentionally or inadvertently, use or rely upon Confidential Information; or in a capacity that is materially similar to the capacity I was in, where I provide services that are materially similar to the services I provided, or with responsibilities that are materially similar to the responsibilities I had, in each case, during the twelve (12) month period preceding the end of my employment with Citadel; (iii) directly or indirectly, for or on behalf of a Competitive Enterprise, working on the development of or utilizing or overseeing work on the development or utilization of quantitative analytics and/or automated trading strategies, proprietary systems or technologies that are materially similar to those that I utilized, developed, oversaw the development or utilization of, was exposed to, or otherwise had access to, when I was employed by Citadel; or that were used or deployed by Citadel personnel working under my direct or indirect supervision; (iv) directly or indirectly, becoming a partner, principal, director, manager or executive of a Competitive Enterprise; (v) directly or indirectly, forming, or acquiring greater than a 5% equity, voting, revenue, income, profit, loss or other economic interest in, any Competitive Enterprise; or (vi) directly or indirectly planning or organizing any Competitive Enterprise.

"Competitive Enterprise" means any business or operation, irrespective of form (e.g., a sole proprietorship, partnership, limited liability company, corporation, joint venture or other type of entity), that (i) engages in, or proposes or plans to engage in, any activity that is identical or materially similar to any Citadel Business Activities, or (ii) owns or controls a significant interest in any entity that engages in, or proposes or plans to engage in, any activity that is identical or materially similar to any Citadel Business Activities.

"Confidential Information" means trade secrets, know-how, other proprietary information or other information that (i) is not generally known to the public, (ii) is not trivial, and (iii) relates to Citadel, any Citadel Client or its or their activities. Examples of Confidential Information include information relating to Citadel's internal financial affairs (such as matters relating to the financial arrangements it has with Citadel Clients, the revenues and expenses associated with the operation of its business and similar matters); business strategies; portfolio holdings and investment performance track record; employment and recruiting processes and strategies; the compensation, skill-set and experience of personnel; information regarding sources of investment capital; proprietary portfolio management techniques and strategies, including automated trading strategies; proprietary quantitative analytics and models used to evaluate financial instruments and markets; investment opportunities; proprietary software and proprietary system architectures; identity of Citadel Clients or other information regarding such Citadel Clients; identity of or other information concerning the business relationship between Citadel and any person whose sources of information, expertise or experience Citadel relies upon in its business; and Citadel's business and investment processes, strategies and methods. Confidential Information is not limited to items labeled as such.

-2-

I have had the opportunity to review this Agreement and to consult with a qualified lawyer prior to signing it, and I voluntarily agree to its terms. I acknowledge that I am entering into this Agreement in exchange for good and valuable consideration, including employment or continued employment with Citadel, as the case may be.

Citadel Investment Group (Europe) Limited

Taym Moustapha

Lorraine Psaras
Director, Human Resources

Date: ___11/09/2014___

Date: __18/9/14__

-3-

## CITADEL MANAGEMENT (EUROPE) II LIMITED
## NON-COMPETE AGREEMENT

Taym Moustapha

I, _____, acknowledge, pursuant to this Non-Compete Agreement (this "Agreement"), that Citadel Management (Europe) II Limited ("HFMEU2") and the Citadel Group (individually or collectively, as the case may be, "Citadel") have invested extraordinary amounts of time, effort and resources to developing protectable business interests, including Confidential Information; relationships with Citadel Employees, Citadel Clients and other counterparties; a track record of investment success; a superior reputation and standing in the investment, business and technology communities; and highly valuable goodwill. I also acknowledge that: (a) Citadel takes significant steps to preserve and protect its Confidential Information and other protectable business interests; (b) Citadel's Confidential Information is the key to Citadel's competitive advantage; (c) during the course of my employment with Citadel, I will have access and exposure to Citadel's Confidential Information and other protectable business interests; (d) Citadel's Confidential Information will retain continuing vitality throughout and beyond the Restricted Period (as defined below); (e) if I leave Citadel and work for myself or with another person or entity and engage in any business activity that is identical or similar to any Citadel Business Activities in violation of this Agreement, it would be highly likely, and in most cases inevitable, that I would rely on Citadel's Confidential Information in the course of my work, either consciously or subconsciously; (f) any loss or erosion of Citadel's competitive advantage caused by my engaging in the activities outlined below in this Agreement would have severe and irreparable repercussions on Citadel's business, including the possibility of substantial investment losses for the endowments, pension plans, foundations and other Citadel Clients that entrust Citadel to manage their investment capital and the possibility of harm to the Citadel Clients to whom Citadel provides other services; and (g) it likely will be necessary for me to avoid certain activities for a period of time following the end of my employment with Citadel so that my ability to use or rely upon Citadel's Confidential Information and to otherwise impair Citadel's protectable business interests is diminished.

I agree that this Agreement is necessary to safeguard Citadel's protectable business interests individually and collectively.

I recognize and accept the individual responsibility that I have in the effort to protect and to preserve Citadel's Confidential Information and other protectable business interests. Unless otherwise defined or indicated herein, all capitalized terms in this Agreement shall have the meaning set forth in the Dispute Resolution Procedure (which definitions are expressly incorporated herein).

1.      Non-Competition. During my employment with Citadel, and during the Restricted Period following the end of my employment, or any extension thereof, I agree that I shall not, directly or indirectly, engage in any Competitive Activity.

(a)      "Restricted Period" means the period of twelve (12) months following the end of my employment with Citadel (regardless of the reason my employment ends). The Restricted Period shall be reduced by one day for each day during the Notice Period prior to the end of my employment during which, at Citadel's direction, I am required not to carry out any duties (but, for the avoidance of doubt, such reduction shall not apply in circumstances where I am on "garden leave" but still required to carry out some duties (including from home)). If no Notice Period is set forth in my offer letter, any compensation letter, or otherwise, the Notice Period set forth in Citadel's Employee Handbook shall apply.

(b)      Extension of Restricted Period. I agree that if I violate any of the terms of this Paragraph 1, Citadel will be entitled to seek equitable relief including a "springboard injunction".

2.      Restricted Period Payment. The Restricted Period Payment will be (a) a monthly payment of 1/12th of my annual base salary for the first six (6) months (less any period spent on garden leave), and (b) a monthly payment of nineteen thousand British Pounds (£19,000) for the remaining six (6) months of the Restricted Period (in each case subject to such deductions as required by law). In all cases, should I resign from Citadel less than one year from my start date, or should Citadel determine that Cause for termination existed at any time during my employment, the Restricted Period Payment will be reduced by 75%. I will receive the Restricted Period Payment each month during the Restricted Period (if any), provided that I do not engage in any Competitive Activity. I further acknowledge that the purpose of Restricted Period Payments is to compensate me for not engaging in any Competitive Activity during the Restricted Period (if any). For purposes of clarity, the Restricted Period Payments shall not begin until after the applicable Notice Period. The Restricted Period Payment is intended to provide a source of income to me during the Restricted Period given that I cannot engage in Competitive Activity during that period. I understand that if I breach this Agreement I will not be entitled to receive any further payments under this provision, whether during the Restricted Period or any extension of the Restricted Period under Paragraph 1(b), but that I will not be released from any continuing or remaining obligations I may have under this Agreement. I further understand that the Restricted Period Payment is not an attempt to quantify or measure the damages that Citadel may suffer if I were to breach this Agreement and shall not serve as a measure of liquidated damages. Notwithstanding anything in this Paragraph, Restricted Period Payments may be reduced as set forth in Paragraph 5 below.

3.      Reasonableness of Restrictions. I acknowledge and agree that Citadel engages in Citadel Business Activities on a global basis, including investing in financial instruments traded on exchanges located throughout the world, and on a bilateral basis with counterparties located throughout the world. I understand that it is not necessary to be physically present on such exchanges or with such counterparties in order to engage in such activities. Rather, all that is necessary is the means to communicate with those capable of facilitating such transactions on my behalf. Accordingly, I understand the need for the restrictions contained in this Agreement to be without limitation as to location. I agree that: (a) the scope and duration of the restrictions and limitations described in this Agreement are reasonable and necessary to protect the legitimate business interests of Citadel, even if any provision of Paragraph 1 above may limit my ability to earn a livelihood for some period of time in a business that is identical or similar to any Citadel Business Activities; (b) all restrictions and limitations relating to the period following the end of my employment will apply regardless of the reason my employment ends; and (c) any alleged claims that I may have against Citadel do not excuse my obligations under this Agreement. I also acknowledge that Citadel will not enter into an employment relationship with me unless I agree to such restrictions and limitations.

4.      Notice to Future Employers. During the Restricted Period or any extension thereof pursuant to Paragraph 1(b), I will notify any subsequent employer of my obligations under this Agreement prior to commencing employment.

5.      Notice to Citadel. On the last day of my employment, I will notify Citadel in writing of any offers of employment that I have accepted or intend to accept and/or any other new business activities that I intend to engage in (including, without limitation, the identity of the prospective employer or nature of the

new business activity, my position, and my responsibilities) if any. During the Restricted Period or any extension thereof, I will provide Citadel fourteen (14) days advance notice prior to becoming employed by any person or entity, or engaging in any capacity in any business of any type or form, regardless of whether or not the prospective employer or business is a Competitive Enterprise, and I will respond to periodic requests from Citadel for information about my employment status. If I become employed or otherwise engaged in business activities that do not qualify as a Competitive Activity during the Restricted Period, the Restricted Period Payment will be reduced by 75% for the duration of such non-competitive activity. If I fail to provide any one or more of the notices or responses required by this Paragraph, or if I am not truthful in my notices or responses, then, in addition to all other remedies available herein and at law or in equity, Citadel (i) may reduce the Restricted Period Payment by 75%, and (ii) may require me to return the gross amount of any Restricted Period Payments I have received. For avoidance of doubt, the remedies provided in this Paragraph are in addition to, and cumulative of, any other remedies available at law, in equity or under this Agreement.

6.       Other Information. This Agreement shall inure to the benefit of any successor or assign of Citadel, whether by merger, consolidation, sale of assets or otherwise. References herein to "Citadel" shall be deemed to include any such successor(s) or assign(s). Each affiliate of HFMEU2 is a third party beneficiary of this Agreement and may enforce HFMEU2's rights under this Agreement. If a court or arbitration tribunal determines that any provision contained in this Agreement (including any definition referred to and/or incorporated herein) is unenforceable in any respect, then the effect of such provision will be limited and restricted so as to permit the provision to be enforceable or, if that is not possible, such provision will be removed from this Agreement and the remainder shall stand. In either case, this Agreement shall be interpreted, even if modified, to achieve the full intent expressed, and the other provisions of this Agreement will remain in force and unmodified and will be enforced as written. Because money damages for the breach or threatened breach of my obligations under this Agreement would be inadequate to properly compensate for losses resulting from my breach, Citadel is entitled to injunctive relief (a court order preventing me from doing something), specific performance (a court order compelling me to do something) and other remedies "in equity" for such a breach or threatened breach, without first being obligated to post any bond or to show actual damages. In addition, Citadel may obtain any other remedies available at law, in equity or under this Agreement. The prevailing party in any action related to or based upon this Agreement shall be awarded its reasonable legal fees, arbitrators' fees, experts' fees, costs and litigation expenses from the other party. In the event of any dispute relating to this Agreement, I understand and agree that it will be resolved according to the terms of the Dispute Resolution Procedure, the terms of which are incorporated herein by reference. No change or waiver of this Agreement will be effective unless made in writing signed by Citadel and me. This Agreement shall be governed by and interpreted in accordance with the laws of England & Wales (without regard to conflict of law principles). To the extent that proceedings in court are permitted by this Agreement or the Dispute Resolution Procedure, Citadel and I both consent to, and submit to, on an exclusive basis, the personal jurisdiction and venue of the courts located in London, England. Citadel and I irrevocably waive any claim that the courts in London, England are an inconvenient forum. I agree to accept service of any court filings and process by delivery to my most current home address on record with Citadel via first class mail, by any nationally recognized overnight delivery provider or by any third party regularly engaged in the business of service of process. This Agreement represents the entire agreement between me and Citadel regarding the matters covered in this Agreement and supersedes any prior agreement between me and Citadel regarding such matters.

I understand that Citadel's employee incentive programs and partnership agreements are separate from and independent of this Agreement and shall apply to me in the manner and at such time as described in the relevant documents separately from and independently of this Agreement, and all Obligations, Compliance Periods and any other terms and conditions set forth and defined in those documents (e.g., non-disclosure of confidential information, non-solicitation, non-competition, etc.) will apply to me separate from and independent of this Agreement. I further understand that (i) Citadel's employee incentive programs and partnership agreements contain different obligations and compliance periods than those set forth herein and (ii) the remedies available to Citadel and the consequences to me for non-compliance differ among this Agreement, the employee incentive programs, and the partnership agreements.

**I have had the opportunity to review this Agreement and to consult with a qualified lawyer prior to signing it, and I voluntarily agree to its terms.** In exchange for good and valuable consideration, including employment or continued employment with Citadel, as the case may be, the sufficiency and receipt of which is hereby acknowledged, Citadel and I agree to all of the provisions of this Agreement.

Acknowledged and Agreed on behalf of Citadel Management (Europe) II Limited:

DocuSigned by:

*Taym Moustapha*

BB3C238E70A3490

Taym Moustapha

5/20/2021
Date: _____

Andrew Payne
Head of People Operations – Europe

## CITADEL MANAGEMENT (EUROPE) II LIMITED
## DISPUTE RESOLUTION PROCEDURE
## (WITH DEFINITIONS FOR EMPLOYMENT AGREEMENTS)
Dated: 5/20/2021

Taym Moustapha

1. **Scope of Agreement.** Citadel Management (Europe) II Limited ("HFMEU2") and I, _____, agree that, except as set forth below, (a) all disputes and claims of any nature that I may have against HFMEU2 and any member of the Citadel Group (individually or collectively, as the case may be, "Citadel"), or any of their respective officers, directors, partners, members, employees or agents in their capacity as such, including all statutory, contractual and common law claims (including all employment discrimination claims), and any disputes concerning the validity, enforceability or applicability of this Dispute Resolution Procedure (this "Agreement") to any particular dispute or claim, and (b) all disputes and claims of any nature that Citadel may have against me (in each case, other than those claims which are not subject to this Agreement by virtue of statute or order of the Court) (together a "Claim"), will be submitted exclusively first (except as provided below) to mandatory mediation, which mediation shall be conducted in accordance with the Centre for Effective Dispute Resolution Model Mediation Procedure ("CEDR") from time to time in force. If the parties are unable to agree on a mediator, we shall jointly request that one be appointed by CEDR.

If mediation has been unsuccessful following 4 weeks of the inception of the Claim, the Claim shall be referred to mandatory arbitration in London, England or another agreed-upon location in accordance with the Arbitration Act 1996 (as amended from time to time) and administered by the London Court of International Arbitration under the Arbitration Rules of the London Court of International Arbitration ("Rules") which terms are hereby deemed incorporated. The Claim will be submitted before a panel of three arbitrators. Each party shall be entitled to nominate one arbitrator to sit on the panel, and the nominated arbitrators will seek to agree a chairperson.

Citadel and I agree not to file, institute or maintain any mediation or arbitration other than in accordance with this Agreement. This Agreement and each of the Employment Agreements (defined below) shall inure to the benefit of any successor or assign of Citadel, whether by merger, consolidation, sale of assets or otherwise. References herein to "Citadel" shall be deemed to include any such successor(s) or assign(s). Each member of the Citadel Group and affiliate of HFMEU2 is a third party beneficiary of this Agreement and may enforce HFMEU2's rights under this Agreement. No change or waiver of this Agreement will be effective unless made in a writing signed by Citadel and me.

2. **Exceptions.** (a) I agree that Citadel may elect, at its option, to have any dispute or claim resolved in court, rather than arbitration, in accordance with the terms of this Agreement by providing written notice of its election to me within ten (10) days after the mediation conference; (b) this Agreement does not apply to disputes that are expressly excluded from arbitration by statute; (c) either Citadel or I may seek and obtain from a court any injunctive or equitable relief necessary to maintain (and/or to restore) the status quo or to prevent the possibility of irreversible or irreparable harm pending final resolution of mediation, arbitration or court proceedings, as applicable; (d) Citadel may bring an action in court to compel arbitration under this Agreement; and (e) either party may bring an action in court to enforce an arbitration award. Citadel and I expressly waive any right to a trial by jury on all disputes and claims covered by this Agreement.

3. **Confidentiality/Parties.** I agree that the resolution of any disputes with Citadel likely would involve Confidential Information and that it is necessary to resolve such disputes in a non-public forum and/or with the greatest possible confidentiality if in a public forum. Accordingly, I agree that all information regarding the mediation or arbitration proceedings, including any mediation settlement or arbitration award, will not be disclosed by me, any mediator or arbitrator or the LCIA to any third party without the written consent of Citadel. The election by Citadel to have any dispute or claim resolved in court, rather than in arbitration, shall not in any way be treated as an acknowledgement that any information related to that dispute or claim is not confidential. In any court filings, I shall comply with applicable court rules to protect Confidential Information, including filing documents reflecting Confidential Information under seal. No party shall join, and no arbitrator or court may allow any party to join, claims of any other person in a single arbitration or court proceeding, and there will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action without the consent of Citadel. I further agree not to consent to become a member of any class in any proceeding against Citadel. If, without my prior knowledge or consent, I am made a member of a class in any proceeding, I agree to opt out of the class at the first opportunity. Notwithstanding any other clause contained in this Agreement, the preceding three sentences shall not be severable from this Agreement.

4. **Time Limits.** Notwithstanding anything to the contrary in any agreement between me and Citadel, including any employee incentive program, equity participation program or similar arrangement, Citadel and I agree that any claim I may have against Citadel (including any discrimination claim, or that Citadel may have against me) must be filed no more than one (1) year after the date on which the claim first arises. Failure to do so will constitute a waiver of claims, and such claims will be barred. Citadel and I waive any statute of limitations to the contrary.

5. **Costs.** The prevailing party shall be awarded its costs and expenses, including legal fees, arbitrators' fees, experts' fees and other fees and expenses incurred in connection with the arbitration or litigation.

6. **General.** Except as otherwise provided herein, if a court or arbitration tribunal determines that any provision contained in this Agreement (including any definition referred to and/or incorporated herein) is unenforceable in any respect, then the effect of such provision will be limited and restricted so as to permit the provision to be enforceable or, if that is not possible, such provision will be removed from this Agreement and the remainder shall stand. In the event that the dispute or claim involves a written agreement between Citadel and me, a Citadel compensation model or employee incentive program or a partnership vehicle, neither the arbitrator(s) nor the court will have authority to add to, detract from or otherwise modify the agreement, model, program or vehicle provisions other than as expressly set forth in the applicable documents. Should this Agreement conflict with the arbitration provisions of any other agreement that I have with Citadel, or with the terms of any Citadel employee incentive program, the terms of this Agreement will govern. This Agreement supersedes all arbitration provisions contained in any past, present or future application, registration, rule or other document of any self-regulatory organization in which Citadel or I am a member, former member or applicant, or with which Citadel is or I am or either Citadel or I was otherwise associated.

7. **Governing Law/Venue.** The terms of this Agreement are incorporated by this reference and made applicable to my Non-Compete Agreement (if applicable), Supplemental Non-Compete Agreement, Non-Solicitation Agreement and Non-Disclosure Agreement (collectively, along with this Agreement, the "Employment Agreements"). Unless otherwise specified, this Agreement shall be governed by and interpreted in accordance with the laws of England and Wales (without regard to conflict of law principles). To the extent that proceedings in court are permitted by the Employment Agreements, Citadel and I both consent to, and submit to, on an exclusive basis, the personal jurisdiction and venue of the courts located in London, England (other than an action to enforce an arbitration award, which may be filed in any court of competent jurisdiction). Citadel and I irrevocably waive any claim that the courts in London, England are an inconvenient forum. I agree to accept service of any court filings and process by delivery to my most current home address on record with Citadel via first class mail, by any nationally recognized overnight

delivery provider or by any third party regularly engaged in the business of service of process. This Agreement represents the entire agreement between me and Citadel regarding the matters covered in this Agreement and supersedes any prior agreement between me and Citadel regarding such matters.

8.    Definitions for Employment Agreements. The following definitions apply to the Employment Agreements and my offer letter:

"Cause" means any termination on or following: (i) my conviction or indictment (including conviction that results from any plea or plea agreement) of any criminal offence; (ii) the knowing material theft, or the knowing embezzlement or fraud by me or my involvement, either alone or in concert with others, in any scheme or conspiracy to knowingly divert assets from Citadel; (iii) my material or persistent failure to perform my material duties or to comply with Citadel's policies and procedures, if such failure, if it can be cured, is not cured within thirty (30) days after Citadel sends me written notice specifying the nature of such failure; (iv) any knowing or reckless act of material dishonesty by me in connection with the performance of my duties; (v) the knowing or reckless breach or violation by me of my contractual obligations to Citadel or any law, fiduciary duty or material regulation respecting the business of Citadel; or (vi) failure to satisfy the terms and conditions set forth in my offer of employment.

"Citadel Business Activities" means any of the investment strategies; trading strategies; research and development activities; trading, trade execution, market making and investment activities; asset management activities; advisory activities; or any other business activities engaged in by Citadel at any time during my employment or that Citadel proposed or planned to engage in at any time in the twelve (12) month period prior to the termination of my employment with Citadel.

"Citadel Client" means any person or entity that was an investor in any funds sponsored or managed by Citadel or that maintained an account managed or sponsored by Citadel, in each case, at any time during the twelve (12) month period preceding the end of my employment (i) that I knew or had reason to know was an investor in any fund sponsored or managed by Citadel or that maintained an account managed or sponsored by Citadel, and (ii) with whom I had material contact while I was an employee of Citadel. Citadel Client also means any person or entity that was an advisor, consultant or manager of any person or entity referred to in clauses (i) or (ii) of the preceding sentence or that I knew or had reason to know invested the capital of others in any fund or account managed or sponsored by Citadel and with whom I had material contact while I was an employee of Citadel. Citadel Client shall also include (x) any person or entity to whom Citadel provides financial or advisory services, (y) any person or entity who is an order flow provider to Citadel, and (z) any person or entity who is a customer (as such term is commonly understood) of Citadel, in each case, during the twelve (12) month period preceding the end of my employment (1) that I knew or had reason to know was a person or entity so described, and (2) with whom I had material contact while I was an employee of Citadel.

"Citadel Employee" means any person that (i) is a member of Citadel Europe LLP; (ii) is employed, or engaged as an exclusive consultant, by Citadel; or (iii) was a member of Citadel Europe LLP or an employee of, or exclusive consultant to, Citadel, in each case, at any time within the ninety (90) day period immediately preceding the conduct in question and with whom I had material contact.

"Citadel Group" means HFMEU2, its direct or indirect parents, its ultimate holding company and each of their subsidiaries (all as defined in the Companies Act 2006) and any affiliate of one or more of the foregoing entities ("affiliate" means any other corporation, trust, association, unincorporated organization, limited liability company, joint venture, partnership or other entity that either directly or indirectly (including through one or more intermediaries) controls, is controlled by or is under common control with such company). For purposes of this definition, "control" (including, with correlative meanings, the terms "controlling", "controlled by" and "under common control with"), as applied to any person, means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of that person, whether through the ownership of voting securities or by contract or otherwise.

"Competitive Activity" means (i) becoming an employee, advisor, consultant, partner, principal, director, manager, or executive of a Competitive Enterprise in a capacity where there is a reasonable possibility that I may, intentionally or inadvertently, directly or indirectly, use or rely upon Confidential Information; or in a capacity that is materially similar to the capacity I was in, where I provide services that are materially similar to the services I provided, or with responsibilities that are materially similar to the responsibilities I had, in each case, during the twelve (12) month period preceding the end of my employment with Citadel; (ii) directly or indirectly, forming, or acquiring greater than a 5% equity, voting, revenue, income, profit, loss or other economic interest in, any Competitive Enterprise; or (iii) directly or indirectly planning or organizing any Competitive Enterprise.

"Competitive Enterprise" means any business or operation, irrespective of form (e.g., a sole proprietorship, partnership, limited liability company, corporation, joint venture or other type of entity), that (i) engages in, or proposes or plans to engage in, any activity that is identical or materially similar to any Citadel Business Activities, or (ii) owns or controls a significant interest in any entity that engages in, or proposes or plans to engage in, any activity that is identical or materially similar to any Citadel Business Activities.

"Confidential Information" means trade secrets, know-how, other proprietary information or other information that (i) is not generally known to the public, (ii) is not trivial, and (iii) relates to Citadel, any Citadel Client or its or their activities. Examples of Confidential Information include information relating to Citadel's internal financial affairs (such as matters relating to the financial arrangements it has with Citadel Clients, the revenues and expenses associated with the operation of its business and similar matters); business strategies; portfolio holdings and investment performance track record; employment and recruiting processes and strategies; the compensation, skill-set and experience of personnel; information regarding sources of investment capital; proprietary portfolio management techniques and strategies, including automated trading strategies; proprietary quantitative analytics and models used to evaluate financial instruments and markets; investment opportunities; proprietary software and proprietary system architectures; identity of Citadel Clients or other information regarding such Citadel Clients; identity of or other information concerning the business relationship between Citadel and any person whose sources of information, expertise or experience Citadel relies upon in its business; and Citadel's business and investment processes, strategies and methods. Confidential Information is not limited to items labeled as such.

"QS Competitive Activity" means (i) becoming an employee, advisor, consultant, partner, principal, director, manager, or executive of a QS Competitive Enterprise in a capacity where there is a reasonable possibility that I may, intentionally or inadvertently, directly or indirectly, use or rely upon Confidential Information; or in a capacity that is similar to the capacity I was in, where I provide services that are similar to the services I provided, or with responsibilities that are similar to the responsibilities I had, in each case, during the twelve (12) month period preceding the end of my employment with Citadel; (ii) directly or indirectly, forming, or acquiring greater than a 5% equity, voting, revenue, income, profit, loss or other economic interest in, any QS Competitive Enterprise; or (iii) directly or indirectly planning or organizing any QS Competitive Enterprise.

"QS Competitive Enterprise" means any business or operation, irrespective of form (e.g., a sole proprietorship, partnership, limited liability company, corporation, joint venture or other type of entity), that (i) engages in, or proposes or plans to engage in, any activity that is identical or similar to any Citadel Business Activities related to

-2-

high frequency trading, algorithmic trading, systematic trading or automated trading (collectively "QS Trading Activities"), or (ii) owns or controls a significant interest in any entity that engages in, or proposes or plans to engage in, any activity that is identical or similar to any QS Trading Activity.

**I have had the opportunity to review this Agreement and to consult with a qualified lawyer prior to signing it, and I voluntarily agree to its terms.** I acknowledge that I am entering into this Agreement in exchange for good and valuable consideration, including employment or continued employment with Citadel, as the case may be.

Citadel Management (Europe) II Limited:

DocuSigned by:

*Taym Moustapha*

B52C32887DA2400

Taym Moustapha

Andrew Payne
Head of People Operations - Europe

Date: 5/20/2021

-3-

99

## CITADEL MANAGEMENT (EUROPE) II LIMITED
## SUPPLEMENTAL NON-COMPETE AGREEMENT

Taym Moustapha

Citadel Management (Europe) II Limited ("Citadel") and I, _____, hereby enter into this Supplemental Non-Compete Agreement (this "Agreement").

Whereas I entered into a Non-Compete Agreement with Citadel dated 5/20/2021 (the "Non-Compete Agreement");

Whereas I understand that my responsibilities with Citadel are such that I will be given, among other things, access to certain additional highly sensitive Confidential Information relating to certain of Citadel's high frequency trading, algorithmic trading, systematic trading or automated trading businesses ("QS Confidential Information"), including Confidential Information to which I did not have access previously and to which I would not be given access absent my agreement to the terms of this Agreement;

Whereas I acknowledge that the QS Confidential Information is so valuable, and will continue to retain its value beyond the Restricted Period defined in the Non-Compete Agreement, that I have agreed that I will not engage in any QS Competitive Activity for the QS Restricted Period defined below. Unless otherwise defined or indicated herein, all capitalized terms in this Agreement shall have the meaning set forth in my Dispute Resolution Procedure.

NOW, THEREFORE, for and in consideration of the covenants and agreements set forth herein, Citadel and I agree as follows:

1.      Non-Competition. During my employment with Citadel, and during the QS Restricted Period following the end of my employment, or any extension thereof, I agree that I shall not, directly or indirectly, engage in any QS Competitive Activity.

(a)     "QS Restricted Period" means the period of three (3) months immediately following the conclusion of the Restricted Period.

(b)     Extension of QS Restricted Period. I agree that if I violate any of the terms of this Paragraph 1, the period of non-competition shall be extended by a period of time equal to that period beginning when the activities constituting such violation commenced and ending when the activities constituting such violation terminated.

2.      QS Restricted Period Payment. The QS Restricted Period Payment will be a monthly payment of thirty thousand British Pounds (£30,000) (subject to such deductions as are required by law) unless I resign from Citadel less than one year from my start date, or Citadel determines that "Cause" for termination existed at any time during my employment, in which case the QS Restricted Period Payment will be reduced by 75%. I will receive the QS Restricted Period Payment each month during the QS Restricted Period, provided I do not engage in any QS Competitive Activity. This QS Restricted Period Payment is solely intended to provide a source of income to me during the QS Restricted Period. I understand that if I breach this Agreement, I will not be entitled to receive any Restricted Period Payments under the Non-Compete Agreement or any further payments under this provision, whether during the QS Restricted Period or any extension of the QS Restricted Period under Paragraph 1(b), but that I will not be released from any continuing or remaining obligations I may have under this Agreement. I further understand that the QS Restricted Period Payment is not an attempt to quantify or measure the damages that Citadel may suffer if I were to breach this Agreement and shall not serve as a measure of liquidated damages. Notwithstanding anything in this Paragraph, QS Restricted Period Payments may be reduced as set forth in Paragraph 5 below.

3.      Reasonableness of Restrictions. I acknowledge and agree that Citadel engages in Citadel Business Activities on a global basis, including investing in financial instruments traded on exchanges located throughout the world, and on a bilateral basis with counterparties located throughout the world. I understand that it is not necessary to be physically present on such exchanges or with such counterparties in order to engage in such activities. Rather, all that is necessary is the means to communicate with those capable of facilitating such transactions on my behalf. Accordingly, I understand the need for the restrictions contained in this Agreement to be without limitation as to location. I agree that: (a) the scope and duration of the restrictions and limitations described in this Agreement are reasonable and necessary to protect the legitimate business interests of Citadel, even if any provision of Paragraph 1 above may limit my ability to earn a livelihood for some period of time in a business that is identical or similar to any Citadel Business Activities; (b) all restrictions and limitations relating to the period following the end of my employment will apply regardless of the reason my employment ends; and (c) any alleged claims that I may have against Citadel do not excuse my obligations under this Agreement. I also acknowledge that Citadel will not give me access to QS Confidential Information unless I agree to such restrictions and limitations.

4.      Notice to Future Employers. During the QS Restricted Period or any extension thereof pursuant to Paragraph 1(b), I will notify any subsequent employer of my obligations under this Agreement prior to commencing employment.

5.      Notice to Citadel. On the last day of my employment, I will notify Citadel in writing of any offers of employment that I have accepted or intend to accept and/or any other new business activities that I intend to engage in (including, without limitation, the identity of the prospective employer or nature of the new business activity, my position, and my responsibilities) if any. During the QS Restricted Period or any extension thereof, I will provide Citadel fourteen (14) days advance notice prior to becoming employed by any person or entity, or engaging in any capacity in any business of any type or form, regardless of whether or not the prospective employer or business is a QS Competitive Enterprise, and I will respond to periodic requests from Citadel for information about my employment status. If I become employed or otherwise engaged in business activities that do not qualify as a QS Competitive Activity during the QS Restricted Period, the QS Restricted Period Payment will be reduced by 75% for the duration of such non-competitive activity. If I fail to provide one or more of the notices or responses required by this Paragraph, or if I am not truthful in my notices or responses, then, in addition to all other remedies available herein and at law or in equity, Citadel (i) may reduce the QS Restricted Period Payment by 75%, and (ii) may require me to return the gross amount of any QS Restricted Period Payments I have received. For avoidance of doubt, the remedies provided in this Paragraph are in addition to, and cumulative of, any other remedies available at law, in equity or under this Agreement.

6.      Other Information. This Agreement shall inure to the benefit of any successor or assign of Citadel, whether by merger, consolidation, sale of assets or otherwise. References herein to "Citadel" shall be deemed to include any such successor(s) or assign(s). Each affiliate of Citadel is a third party beneficiary of this Agreement and may enforce Citadel's rights under this Agreement. If a court or arbitration tribunal determines that any provision contained in this Agreement (including any definition referred to and or incorporated herein) is unenforceable in any respect, then the effect of

such provision will be limited and restricted so as to permit the provision to be enforceable or, if that is not possible, such provision will be removed from this Agreement and the remainder shall stand. In either case, this Agreement shall be interpreted, even if modified, to achieve the full intent expressed, and the other provisions of this Agreement will remain in force and unmodified and will be enforced as written. Because money damages for the breach or threatened breach of my obligations under this Agreement would be inadequate to properly compensate for losses resulting from my breach, Citadel is entitled to injunctive relief (a court order preventing me from doing something), specific performance (a court order compelling me to do something) and other remedies "in equity" for such a breach or threatened breach, without first being obligated to post any bond or to show actual damages. In addition, Citadel may obtain any other remedies available at law, in equity or under this Agreement. The prevailing party in any action related to or based upon this Agreement shall be awarded its reasonable legal fees, arbitrators' fees, experts' fees, costs and litigation expenses from the other party. In the event of any dispute relating to this Agreement, I understand and agree that it will be resolved according to the terms of the Dispute Resolution Procedure, the terms of which are incorporated herein by reference. No change or waiver of this Agreement will be effective unless made in writing signed by Citadel and me. This Agreement shall be governed by and interpreted in accordance with the laws of England and Wales (without regard to conflict of law principles). To the extent that proceedings in court are permitted by this Agreement or the Dispute Resolution Procedure, Citadel and I both consent to, and submit to, on an exclusive basis, the personal jurisdiction and venue of the courts located in London, England. Citadel and I irrevocably waive any claim that the courts in London, England are an inconvenient forum. I agree to accept service of any court filings and process by delivery to my most current home address on record with Citadel via first class mail, by any nationally recognized overnight delivery provider or by any third party regularly engaged in the business of service of process. This Agreement represents the entire agreement between me and Citadel regarding the matters covered in this Agreement and supersedes any prior agreement between me and Citadel regarding such matters.

I understand that Citadel's employee incentive programs and partnership agreements are separate from and independent of this Agreement and shall apply to me in the manner and at such time as described in the relevant documents separately from and independently of this Agreement, and all Obligations, Compliance Periods and any other terms and conditions set forth and defined in those documents (e.g., non-disclosure of confidential information, non-solicitation, non-competition, etc.) will apply to me separate from and independent of this Agreement. I further understand that (i) Citadel's employee incentive programs and partnership agreements contain different obligations and compliance periods than those set forth herein and (ii) the remedies available to Citadel and the consequences to me for non-compliance differ among this Agreement, the employee incentive programs, and the partnership agreements.

**I have had the opportunity to review this Agreement and to consult with a qualified lawyer prior to signing it, and I voluntarily agree to its terms.** In exchange for good and valuable consideration, including employment or continued employment with Citadel, as the case may be, the sufficiency and receipt of which is hereby acknowledged, Citadel and I agree to all of the provisions of this Agreement.

Acknowledged and Agreed on behalf of Citadel Management (Europe) II Limited:

DocuSigned by:

*Taym Moustapha*

BF3C238870A3489

Taym Moustapha

Andrew Payne
Head of People Operations - Europe

5/20/2021

Date: _____

-2-