IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITADEL SECURITIES AMERICAS, LLC, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| - v - | ) Case No. 1:23-cv-5222-GHW ) |
| PORTOFINO TECHNOLOGIES AG, *et al.*, | ) ) ) |
| Defendants. | ) ) |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/07/2025

**PROTOCOL GOVERNING PRODUCTION OF**
**ELECTRONICALLY STORED INFORMATION**

Plaintiffs Citadel Securities Americas, LLC, Citadel Securities Americas Services, LLC, Citadel Securities (Europe) Limited, and Citadel Management (Europe) II Limited (collectively, "Plaintiffs") and Defendants Portofino Technologies AG and Portofino Technologies USA, Inc., (collectively, "Defendants," and with Plaintiffs, the "Parties" and each a "Party") hereby stipulate to a protocol for the production of Documents and Electronically Stored Information ("ESI"). The Parties are in possession of ESI that may be produced in this matter and the Court hereby orders as follows regarding the production of ESI.

1. Definitions: In this Stipulation, the following terms have the following meanings:

    a. "ESI" means Electronically Stored Information, including, but not limited to, email, attachments to email, other electronic Documents such as word processing, spreadsheet, PowerPoint, HTML, and text files and any other files stored in an electronic format. "Document" and "ESI" shall have the same meaning as the usage of the term in Civil Rule 26.3(c)(2) of the Local Rules of the United States District Court for the Southern District of New

1

  York and Federal Rule of Civil Procedure 34(a)(1)(A).

b.    "Metadata" means: (i) information embedded in a Native Format file that is not ordinarily viewable or printable from the application that generated, edited or modified such Native Format file; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native Format file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. Metadata is a subset of ESI. "Native Format" means the file structure of a Document created by the original creating application.

c.    "Custodian" means the individual or originating source from which Documents or ESI will be collected and reviewed.

d.    "Load File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends. A Load File will also contain data relevant to the individual Documents, including extracted and user-created Metadata, as well as OCR and Extracted Text, should such data be available.

e.    "OCR" means optical character recognition which is created by software used in conjunction with a scanner that is capable of reading text-based/hard copy Documents searchable using appropriate software.

f.    "Extracted Text" means the text extracted from a Document in Native Format, and includes all header, footer, and body information, including any

hidden content, when available.

2. <u>Scope</u>: The Parties agree to continue to meet and confer to discuss the use of search terms for the collection and review of responsive Documents to certain Document requests. All Parties preserve their attorney-client privileges and other privileges, and there is no intent by this Stipulation, or the production of Documents pursuant to this Stipulation, to in any way waive or weaken these privileges. Nothing in this Stipulation shall limit the Parties' respective rights and obligations concerning confidential, proprietary or private information, with respect to which they may make such agreements or Stipulations as they see fit, subject to applicable law. All Documents produced pursuant to this Stipulation are fully protected and covered by the protective order governing this action, as well as any Court orders. Nothing in this Stipulation is intended to be an exhaustive list of discovery obligations or rights of a Party requested to produce Documents or ESI or a Party requesting Documents or ESI. To the extent additional obligations or rights not addressed in this Stipulation arise under the Federal Rules of Civil Procedure, local rules, or applicable state and federal statutes, they shall be controlling. The Parties reserve all rights to object to any demand to produce or collect ESI of any particular type or from any particular source. The Parties agree to make best efforts to comply with this Stipulation but reserve all rights to produce Documents in a manner not described in this Stipulation to the extent the obligations imposed on producing Parties are impracticable or unreasonable. The Parties further reserve the right to seek to supplement or modify this Stipulation at a later date.

3. <u>ESI Production Format</u>: ESI shall be produced primarily as single-page, black and white, Group IV, 300 DPI TIFF images, or in color as single-page 300 DPI JPG images. The images shall be accompanied by searchable text files containing all extracted text on a Document basis, or if extracted text is unavailable (*e.g.*, image PDF files), then searchable text generated using OCR

will be provided. The text files shall be named to match the endorsed number assigned to the image of the first page of the Document. The images and text files shall also be accompanied by a cross-reference load file. The producing Party shall also provide a data Load File that shall contain the agreed-upon coding and Metadata, as reasonably available, associated with each field as specified in Schedule A hereto. Load Files will be provided in Concordance DAT file format, with field name headers and standard Concordance delimiters.

4. <u>Email Production Format</u>: Email, together with all attachments, shall be produced as follows:

    a. The Parties will provide the following Metadata fields for each email in the index load file (DAT file), to the extent that they are available for each email: SendFrom ("From"), SendTo ("To"), CopyTo ("CC"), BlindCopyTo ("BCC"), DateSent, TimeSent, and Subject.

    b. The Parties will provide single-page TIFF images representing the pages of emails that would have been viewable in the ordinary course of business prior to collection. Each such TIFF image will show the endorsed Document number and confidentiality status for each such email page.

    c. The Parties will provide an index Load File for the items, which will also include the following data items: FIRSTBATES, LASTBATES, BEGATTACH, ENDATTACH, and the original source/custodian of the email.

    d. The Parties will produce parent emails for all produced attachments and vice versa.

5. <u>Short Messaging Production Format</u>: Short messaging formats, such as text

messages, SMS messages, instant messages, iMessages, Skype messages, Slack messages, Microsoft Teams messages, messages exchanged on social media platforms, or any other message board, chat, or social media message or post, together with all attachments, shall be produced in a format that permits both review of individual messages and threading of messages contained in a single conversation. The Parties will provide appropriate Metadata fields for each type of short messaging format in the index load file (DAT file). To the extent available, the Metadata fields will include the fields listed in Schedule A.

6. <u>Paper Production Format</u>: Documents stored in paper form in the ordinary course of business shall be converted to electronic form and produced as single-page, uniquely and sequentially numbered CCITT Group IV TIFF image files not less than 300 dpi resolution to enable the generation of searchable text using OCR. The images shall be accompanied by text files containing the OCR-generated searchable text. The text files shall be named to match the endorsed number assigned to the image of the first page of the Document. The images shall also be accompanied by an image cross-reference Load File, providing the beginning and ending endorsed number of each Document and the number of pages it comprises. The producing Party shall also provide a Load File corresponding to the CCITT Group IV TIFF image files that shall contain the Metadata fields defined in Schedule A hereto to the extent such fields are known and available. The Parties will scan Documents stored in paper form such that the images appear the same as the Documents are kept in the ordinary course of business. Reducing image size may be necessary to fit page size or display production numbers and confidentiality designations without obscuring text.

7. <u>Bates Numbering for TIFF Images</u>: Each page of a Document produced in TIFF file format shall be endorsed with a legible, unique numeric identifier ("Bates Number") not less than

eight (8) digits (with zero-padding) electronically "burned" onto the image at a place on the Document that does not obscure, conceal, or interfere with any information originally appearing on the Document. The Bates Number for each document shall be created so as to identify the producing Party or non-party and the unique Document number (*e.g.*, "ABC00000001").

8. <u>Document Unitization</u>: If a paper Document is more than one page, or contains attachments or notes affixed thereto, to the extent possible, the unitization of the Document and any attachments or affixed notes shall be maintained as they existed when collected by the Parties. If unitization cannot be maintained, the original unitization shall be documented in a load file or otherwise electronically tracked. For ESI, all unitization should be defined within the Load File including the designation of parent/attachments both for email and attachments.

9. <u>Color Documents</u>:  If the receiving Party believes that a Document is not legible or where the absence of color materially affects the Document, the receiving Party may request that the Document be produced in color, and the Parties shall meet and confer as to the possibility of rendering the Document in color format.

10. <u>Production of ESI in Native Format</u>: Other than as specifically set forth below, a producing Party need not produce Documents in Native Format. Any Native Format files that are produced should be produced with a link in the "NativeFile" Metadata field, along with all extracted text and Metadata fields set forth in Schedule A hereto. No Document produced in Native Format shall be intentionally manipulated to change the appearance or substance of the Document prior to its collection or production. All redactions of ESI will be performed on a TIFF-imaged version of the Document only, and Native Format files and extracted text will not be provided. Redactions on grounds of attorney-client privilege or attorney work product shall be logged on a privilege log in the form agreed to by the Parties. Redacted ESI will be run through OCR to include

all visible (non-redacted) text. Any Metadata fields that contain information subject to redaction shall not be produced, however, the remainder of the Metadata fields for that Document that are not subject to redaction will be produced. Notwithstanding the foregoing, the Parties hereby reserve their rights to request production of Documents in Native Format in the future should the need to do so arise. Should such need arise, the Parties will meet and confer concerning production of any discovery materials in Native Format. If the Parties are not able to reach agreement concerning the production of discovery materials in Native Format, they shall promptly bring such matter to the Court's attention.

11. <u>Spreadsheets</u>: Spreadsheets (*e.g.,* Excel and Excel-type files) shall be produced in their Native Format with a link in the NativeFile Metadata field, along with extracted text. For extracted text, the producing Party may need to unhide all rows and column depending on what method is being used to extract text.

12. <u>Media and PowerPoint Files</u>: All video, animation, audio, or PowerPoint (*e.g.,* PPT, PPTX) files shall be produced in their Native Format. All video, animation, audio, or PowerPoint files that a producing Party in good faith believes contains material protected by either the attorney-client privilege or attorney work product doctrine must be identified on a privilege log in the form agreed to by the Parties.

13. <u>Other File Types</u>: In some cases, it may be necessary to produce Documents in their Native Format because such Documents cannot be rendered into TIFF format. In other cases, it may be necessary to alter a native file to create a format suitable for production purposes (*e.g.,* compiled web pages, etc.). If alteration of a Native Format file is necessary to create a format suitable for production, the Parties will discuss and agree upon an acceptable format.

14. <u>Specific Requests for Production of ESI in Native Format</u>: Other than the specific

file types described above, after initial production of ESI in TIFF format, a Party must make a showing of good cause demonstrating particularized need for production of other ESI in its Native Format. In the event that a receiving Party requests production of Native Format ESI, the Parties shall negotiate in good faith about the timing, cost, and method of such production.

15. <u>De-Duplication of Non-Emails</u>: All non-email Documents will be de-duplicated across Custodians prior to production, with an "AllCustodians" Metadata field identifying all the custodians who possessed copies of the Documents, to the extent such field is reasonably practical to include. "De-duplicated across Custodians" means that exact duplicates of Documents (where the Document family is identical), as identified by MD5 hash value, will not be produced.

16. <u>De-Duplication of Emails</u>: For emails, in addition to de-duplication across custodians, thread de-duplication may be applied prior to production. Thread de-duplication allows emails that are wholly contained in a later, surviving email, with all of the recipients and attachments contained, to be identified and suppressed from production. An email is only removed from production if 100% of the message body is contained, all addresses are included, and all attachments are included in a later email that is produced. The receiving Party may request that specific email(s) be produced without threading. When the latest version of an email thread is considered privileged and withheld from production, the Parties are obligated to "re-thread" the most complete non-privileged earlier emails in the thread and produce such non- privileged emails.

17. <u>De-Nisting of ESI</u>: The Parties may remove operating system files and program files with the assistance of their respective vendors prior to conducting searches of such data in accordance with the National Software Reference Library De-Nisting Process.

18. <u>Translations</u>: To the extent that translations are prepared for litigation and produced for use as evidence, they need not be produced in Native Format. Instead, each translation will be

produced as a TIFF rendering of the Document, accompanied by a searchable text file. In addition, each translated TIFF rendering will be named in a format that includes the Bates Number matching the last page of the untranslated Document corresponding with the translated TIFF rendering, plus a "T" at the end of the Bates number indicating that it is a translation, and a numeric suffix indicating the page numbers of the translation (e.g., "ABC00000001T 0001, 0002, 0003, etc.). For each translation, the producing Party shall produce, in addition to the TIFF rendering and searchable text file of the translation, the untranslated Document in the format(s) specified in this Stipulation. This provision applies solely to the production, if any, of translations of foreign language Documents, where such translations are prepared for purposes of the litigation. It does not address whether the parties have any duties or obligations to make and produce such translations, and the parties reserve their rights regarding such translations. By contrast, to the extent that the parties are in possession or control of translations prepared in the ordinary course of business of relevant and responsive, non-privileged Documents, the parties will produce such translations (including all agreed-upon metadata fields) pursuant to the format and requirements set forth in the other provisions of this Stipulation.

19.     <u>Placeholders</u>: In the event that any production contains Documents that could not be rendered to TIFF, the producing Party will insert a numbered TIFF format placeholder page as a replacement for, and to identify, any Document that could not be rendered to TIFF or produced for some other reason. The placeholder page(s) will bear the text "Document Cannot Be Rendered." Any file produced in its Native Format will be produced with an associated TIFF format placeholder with the text "Document Produced in Native Format."

20.     <u>Production Media</u>: The Parties will produce Document images, Native Format files, load files, and Metadata.

21. <u>Original Documents</u>: Nothing in this Stipulation shall eliminate or alter any Party's obligation to retain Native Format copies, including associated Metadata, of all ESI produced in this matter and original hard copy Documents for all paper Documents produced in the matter.

22. <u>Image Not Readable</u>: Where TIFF images of certain Documents are not readable, or do not represent the files as maintained in the ordinary course, and replacement images do not cure the concern, the Parties will produce such Documents in Native Format or in hard copy. To the extent the receiving party obtains through discovery a file or Document that the Party believes is not adequately represented in TIFF image format, the receiving party may request that file or Document be produced in Native Format, the production of which shall not be unreasonably withheld.

23. <u>Third-Party Software</u>: To the extent that Documents produced pursuant to this Stipulation cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such Documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third party.

24. <u>Processing Specifications</u>: The Parties shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production:

    a. For Excel or other spreadsheet files that must be produced in TIFF image format for redactions, hidden columns and rows shall be made visible.

    b. PowerPoint Documents must be processed with hidden slides and speaker's notes unhidden.

    c. To the extent Documents in a foreign language are produced, processing of such Documents shall be Unicode-compliant.

The foregoing provisions do not in any way limit a producing Party's ability to make any necessary redactions, whether for privilege, confidentiality, privacy, or compliance with foreign data protection and privacy laws.

25. <u>Production Specifications</u>: All Documents will be produced according to the following Production Specifications.

    a. Load Files:

        i. Concordance (DAT, OPT, LFP):

            (1) Version 10 for Unicode support.

        ii. DAT file:

            (1) UTF-8 encoded Unicode to support foreign language.

        iii. Fields available in the DAT file (with standard Concordance delimiters):

            (1) See Schedule A for list of fields.

            (2) Translations to include only FIRSTBATES, LASTBATES, BEGATTACH, ENDATTACH.

        iv. Text files will not be provided within the DAT file.

    b. TIFF Specifications:

        i. Black and white.

        ii. Single page.

        iii. CCITT Group IV FAX Compression.

        iv. 300 dots per inch.

    c. <u>Format – Native Files</u>: If a document is produced in a native format, a single-page, Bates stamped image slip sheet stating the document has been

     produced in native format should also be provided. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field.

  d. <u>Endorsements</u>:

    i. Printed with a font size comparable to 10-point Arial.

    ii. Right footer: Bates Number.

    iii. Left Footer: Confidentiality legend.

     (1) Legend values:

      (a) CONFIDENTIAL

      (b) HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

    iv. Redactions: White redactions with a border.

  e. <u>Text Files</u>:

    i. One Unicode text file will be provided per Document (named according to the beginning Bates Number for each Document).

    ii. Text will be extracted from Native Format files when possible.

    iii. Text will be provided with scanned Documents where such text can be obtained through OCR.

    iv. Text files will not contain page breaks.

    v. Placeholders (with the exception of placeholders for files produced in Native Format) will receive a text file matching the placeholder text.

      vi.    Text files for redacted Documents will be created from the redacted image.

      vii.    OCR text will be provided for Documents where text cannot be extracted.

      viii.    Text files will support foreign characters for upload into Concordance Version 10.

f.   <u>Sorting</u>:

      i.    Keep source/attachments (families) together.

      ii.    Group by custodian, to the extent it is practicable.

g.   <u>Data Organization</u>:

      iii.    Images: 1000 TIFF files per folder; no more than 1000 subfolders per folder; root folder named "Images."

      iv.    Text files: Will reside in a separate folder named "Full_Text."

      v.    Native Format files: Will reside in a separate folder named "Natives."

      vi.    Load Files: Will reside in the root folder.

26.   <u>Documents Produced by Third Parties</u>: Notwithstanding the other provisions of this Stipulation, a Party receiving Documents from a third party in response to any request for Documents in this action will provide those Documents to the other Party in the same form and with the same Metadata that was provided by the third party.

27.   <u>Reservation of Rights</u>: Nothing contained herein is intended to create, serve as precedent for, or constitute a waiver or relinquishment of any Party's objections or argument pertaining to any potential future ESI production(s). Nothing contained herein constitutes waiver

of any Party's rights or obligations under any law, including but not limited to law regarding any matter or information that is or may be claimed to be privileged, confidential proprietary, or otherwise personal or private.

28.     The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Stipulation.

DATED: November 6, 2025
      New York, New York

| **HECKER FINK LLP** | **SLARSKEY LLC** |
|---|---|
| By: */s/ Michael Ferrara* | By: */s/ David Slarskey* |
|    Michael Ferrara |    David Slarskey |
|    Hecker Fink LLP |    Slarskey LLC |
|    350 Fifth Avenue, 63rd Floor |    767 Third Avenue, 14th Floor |
|    New York, New York 10118 |    New York, NY 10017 |
|    (212) 763-0883 |    (646) 893-6082 |
|    mferrara@heckerfink.com |    dslarskey@slarskey.com |
| *Attorney for Plaintiffs* | *Attorney for Portofino Defendants* |

SO ORDERED.

Dated: November 7, 2025
      New York, New York

                                              GREGORY H. WOODS
                                              United States District Judge

## Schedule A

| Production Field Labels | Description | Required for: |
|---|---|---|
| FIRSTBATES | First Bates Number of Document | All |
| LASTBATES | Last Bates Number of Document | All |
| BEGATTACH | First Bates Number of attachment range | All |
| ENDATTACH | Last Bates Number of attachment range | All |
| PAGES | Number of pages | All |
| CUSTODIAN | Mailbox where the email resided; individual from whom the Documents originated | All |
| ALLCUSTODIANS | For de-duplicated Documents; all individuals who possessed a copy of the Document | All |
| FROM | Sender | All |
| TO | Recipient(s) | All |
| CC | Carbon copy recipient(s) | All |
| BCC | Blind carbon copy recipient(s) | All |
| SUBJECT | Subject of the email | Email only |
| DATESENT (mm/dd/yyyy) | Date the email was sent | Email only |
| TIMESENT (HH:mm:ss) | Time the email was sent; must be a separate field and cannot be combined with the DATESENT field | Email only |
| FILENAME | File name | Attachments/loose files |
| FILE_EXTEN | The file extension of the email or attachment; will vary depending on the email format | Attachments/loose files |
| FILE SIZE | Size of file | Attachments/loose files |
| DATE MOD (mm/dd/yyyy) | Empty for email; attachment/native file metadata | Attachments/loose files |
| NATIVEFILE | Link to file produced in Native Format | Any Documents produced in Native Format |
| TEXTPATH | Link to produced extracted or OCR text file | All |
| CONFIDENTIALITY DESIGNATION | Confidentiality designation assigned to document | Any Document assigned a Confidentiality Designation |
| REDACTION (Y/N) | Indicating whether or not a document contains redactions | Any Document containing redactions |

16

| DATE CREATED (mm/dd/yyyy) | Document's creation date | Attachments/loose files |
| --- | --- | --- |
| TIME CREATED (HH:mm:ss) | Document's creation time | Attachments/loose files |
| MD5Hash | Calculated MD5Hash for duplicate identification | Emails/Attachments/loose files |