

David Slarskey
646-893-6082
767 Third Ave, 14th Fl
New York, NY 10017

December 22, 2025

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED: 12/23/2025 |

**MEMORANDUM ENDORSED**

BY E-Filing
Hon. Gregory H. Woods
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2260
New York, NY 10007

*Re: Citadel Securities Americas LLC et al v. Portofino Technologies
AG, et al*, 23-CV-05222 (GHW) (SDA)

Dear Judge Woods,

This firm represents Defendants Portofino Technologies AG and Portofino Technologies USA, Inc. (collectively "Portofino" or "Defendants"). We write jointly with Plaintiffs pursuant to the Court's Individual Rule 2.E.ii. and Local Rule 37.2 to request a pre-motion discovery conference.[1]

**Defendants' Positions**

**The Court Should Compel a More Specific Response to Interrogatory 3**

A plaintiff asserting trade secret misappropriation must "disclose the precise formula for its trade secret," and do so with "particularity" as a condition of maintaining its claim. *Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 258–59 (reasonable particularity), 264 (obligation to disclose) (S.D.N.Y. 2014), *aff'd sub nom. Big Vision Priv. Ltd. v. E.I du Pont de Nemours & Co.*, 610 F. App'x 69 (2d Cir. 2015) (dismissing where plaintiff "struggled to define [the trade secret] over the course of the litigation").

"[T]he level of specificity [required] increases as the case and discovery proceeds." *Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*, 2019 WL 5694256, at *17 (E.D.N.Y. July 22, 2019). Entry of a confidentiality order enables more detailed disclosure as compared to the pleading stage. *See Big Vision*, 1 F. Supp. 3d at 264. During discovery, a plaintiff must "provide enough information about the alleged trade secrets (1) to put the defendant on notice of plaintiff's claims, and (2) to allow defendant to discern the relevancy of any discovery requests." *Success Sys., Inc. v. CRS, Inc.*, 2023 WL 2403940, at *2 (D. Conn. Mar. 8, 2023) (quotations omitted); *accord Rocket Pharms., Inc. v. Lexeo Therapeutics, Inc.*, 764 F. Supp. 3d 115, 118 (S.D.N.Y 2025) (same). This oft-repeated standard derives from *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676,

---

[1] The parties have met and conferred multiple times by telephone, including the undersigned, Renee Bea and Deepa Devanathan (Slarskey LLC), Kate Doniger, Andrew Chesley, and Damaris Hernandez (Hecker Fink LLP), on Friday, December 5, at 4:00 pm for 28 minutes, and Monday, December 15, at 4:00 pm for 20 minutes.

1

680–81 (N.D. Ga. 2007), which underscores the need (i) to avoid "fishing expeditions" aimed at unfairly discovering *defendant's* trade secrets; (ii) for disclosure of what plaintiff contends was stolen, so one can "know whether the information sought [in discovery] is relevant"; and (iii) to avoid permitting a plaintiff to "mold its cause of action around the discovery it receives."

It is within the Court's discretion to determine the precise degree of specificity required. "[I]t is clear, however, that generic descriptions of categories are insufficient to . . . satisfy the 'reasonable particularity' standards." *Rocket Pharms.*, 764 F. Supp. 3d at 119. Similarly, it is not sufficient to rely on disclosure of "the end results of, or the functions performed by, the claimed trade secrets." *DeRubeis*, 244 F.R.D. at 679.

Defendants' Interrogatory 3 ("Rog 3") requested that Plaintiffs specify the trade secrets alleged to have been stolen. (Ex. 1 at 5.) Specification is crucial here, where (i) Citadel has not historically been in the crypto business, but now seeks entry, such that there is real risk it is using this litigation to unfairly disclose *Portofino's* trade secrets; (ii) █████████████████████ ████████████████████████████████████████████████████████████ and (iii) where Citadel's allegations of trade secret theft are framed so broadly that they would (arguably by design) warrant intrusion into *all* of Portofino's business records.

After months of delay—insisting they would specify their trade secrets after a confidentiality order was entered—Plaintiffs identified two generic, jargon-filled "Trade Secrets" common to any *quant* workplace, which are at best "end results of, or the functions performed by, the claimed trade secrets," *DeRubeis*, 244 F.R.D. at 679: (i) Citadel's supposed "asset-neutral approach to market microstructure analysis and modeling techniques that are used to develop Plaintiff's predictive modeling systems for a particular asset class, known as Plaintiffs' 'alpha' research framework" and (ii) Citadel's "simulation environments that Plaintiffs use to replicate a historical view of how a given trading strategy would perform." (Ex. 1 at 6–7 ("Rog 3 Response").)

These end-result descriptions are a far cry from the detailed indexes that courts have previously held adequately disclose trade secrets alleged to have been stolen,[2] and provide insufficient detail from which to discern the relevance of Citadel's broad discovery requests.[3] (Ex. 3, RFPs.) Note that Citadel does not claim any particular *model or algorithm* was stolen, or any particular "simulation," but rather theft of the "techniques that are used to develop" modeling systems, and the "research framework" that Citadel uses to build simulation environments for new asset classes. This is jargonish gobbledygook intended to *sound* specific, but which does not actually particularize any trade secrets. It simply describes the *process of quantitative analysis*,

---

[2] *See, e.g., Dumbo Moving & Storage, Inc. v. Piece of Cake Moving & Storage LLC*, 2025 WL 219063, at *6 (S.D.N.Y. Jan. 16, 2025) (finding narrative descriptions of twelve alleged trade secrets combined with illustrative screenshots and specific source code references adequate); *Bytemark, Inc. v. Xerox Corp.*, 2022 WL 120980, at *5 (S.D.N.Y. Jan. 11, 2022) (finding to be adequate plaintiff's agreement to identify trade secrets through production of source code and confidential information in its possession prior to defendant's production of confidential materials).

[3] While Defendants have gathered and produced readily identifiable information, the parties have not negotiated search terms and custodians *for either side*, and Defendants have been awaiting specification of Plaintiffs' "trade secrets" so we could complete discovery efficiently and in one fell swoop. Their refusal (or inability) to do so is delaying the process.

which is not protectible as a trade secret.[4] *See Big Vision*, 1 F. Supp. 3d at 258–59 ("special knowledge of person skilled in the trade" not a trade secret (citation omitted).) The emperor has no clothes.

The Court should compel Plaintiff to provide a more specific delineation of its supposed trade secrets, so that Portofino (i) has appropriate notice of what—specifically—it is alleged to have stolen, and (ii) can discern the appropriate scope of disclosure in response to Plaintiffs' exceedingly broad demands, *see Rocket Pharms.,* 764 F. Supp. 3d at 119, while avoiding abusive litigation tactics. *See DeRubeis*, 244 F.R.D. at 680–81. Plaintiffs' position fails in reliance on cases that either require more specific delineation of supposed trade secrets, *see Rocket Pharms.*, 764 F. Supp. 3d at 119, or cases that are inapposite because they find that production of source code information meets the specificity requirement, *see Bytemark*, 2022 WL 120980, at *5.[5]

**<u>Plaintiffs' Position</u>**

Defendants' request is premature. Discovery is in its earliest stages, and Defendants have not produced a single document responsive to Plaintiffs' requests relating to the trade secrets at issue. Especially in cases involving a former employee's theft of trade secrets, the bar for the "particularity" of a trade secrets disclosure is far lower at the outset of discovery than in later stages of litigation—a distinction Defendants conveniently gloss over. *See supra* p. 1 (citing case law assessing the sufficiency of trade secret disclosures at *summary judgment*). There is no dispute that Plaintiffs will provide a more particularized statement once discovery has progressed. That time, however, is not now. No further response is required—or even possible—until Defendants have made at least some effort to comply with their discovery obligations to produce relevant information, uniquely in their possession, about their trading systems, models, and what they took when they left Citadel Securities. To date, Defendants have not produced any documents responsive to requests for such information. Defendants' effort to compel a further interrogatory response—while withholding their own productions—is improper and should be denied.

Plaintiffs' supplemental response to Defendants' Rog 3 is more than sufficient to place Defendants on notice of the nature of Plaintiffs' claims and to allow Defendants to understand the relevance of Plaintiffs' discovery requests, which is all that is required at this stage. *Rocket Pharms.*, 764 F. Supp. 3d at 118. Defendants' citation to the application of the "particularity" standard in *Big Vision*, 1 F. Supp. 3d at 258-59, where the court considered the sufficiency of a trade secret disclosure *at summary judgment*, is inapposite and unhelpful to deciding the sufficiency of Plaintiffs' supplemental Rog 3 response here, at the outset of discovery. *See CapRate Events, LLC v. Knobloch*, No. 17 Civ. 5907, 2018 WL 4378169, at *2 (E.D.N.Y. Mar. 9,

---

[4] Plaintiffs' Rog 3 Response contain little more than generic descriptions of a quantitative trading business, including publicly available information about Citadel's business. *See* "Alpha Research," *available* at https://www.citadelsecurities.com/careers/quantitative-research/.

[5] As in *Big Vision*, Plaintiffs are "struggling to define [its trade secret]" at issue in this action. 1 F. Supp. 3d at 258–259. Plaintiffs' Rog 3 Response — which purportedly "describe[s] specifically each and every trade secret and all confidential information that [Citadel] contends the Defendants could have misappropriated or did misappropriate" (Rog 3) *does not, even by Plaintiffs' contention, contain any confidential information*. While not dispositive, this is strongly suggestive that there are no legitimate trade secrets or confidential information at stake in this proceeding.

2018) (cases cited by defendant about "resolv[ing] a trade secret claim at summary judgment" were unhelpful in addressing a discovery motion).[6]

Rather, courts in trade-secret cases routinely recognize that "a very general showing may be sufficient, particularly in the common scenario where the trade secrets plaintiff may not know which parts of its trade secrets have been misappropriated." *Rocket*, 764 F. Supp. 3d at 118-19. Because Defendants have withheld all materials explaining "how [Portofino] operates," Plaintiffs cannot yet know with greater specificity "which parts of its trade secrets have been misappropriated." *Uni-Sys., LLC v. U.S. Tennis Ass'n*, No. 17 Civ. 147, 2017 WL 4081904, at *4 (E.D.N.Y. Sept. 13, 2017); *see also DeRubeis*, 244 F.R.D. at 680 (forcing trade-secret plaintiff to be too specific too early risks "miss[ing] what the defendant is doing" with its information).

In their Rog 3 supplemental response, Plaintiffs identified and detailed numerous aspects of their trade secrets that were or could have been misappropriated by Defendants, including their predictive modeling system and their simulation environments, each of which is used by Citadel Securities to generate numerous highly confidential algorithms and models.[7] Defendants' position that Plaintiffs must produce, at this stage, the "particular *model or algorithm*" that was stolen turns the principles underlying trade-secrets discovery on their heads. Only *Defendants* know precisely which models, algorithms, or other strategies were stolen or replicated.[8] *See Moog Inc. v. Skyryse, Inc.*, No. 22 Civ. 187, 2022 WL 16852364, at *2 (W.D.N.Y. July 22, 2022) (allowing plaintiff "to first examine the information which was admittedly taken by its former employees" before requiring plaintiff to supplement its trade secret disclosure); *see also St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630, 641 (D. Or. 2015) (refusing to require plaintiff to "identify its trade secrets without first knowing which have been misappropriated"). Plaintiffs' response to Rog 3 has sufficiently "anchor[ed] any future discovery," *Dumbo*, 2025 WL 219063, at *8, and Defendants must now produce information concerning their own trading and models so Plaintiffs can advance their claims. *See CapRate*, 2018 WL 4378169, at *3 (denying motion to compel trade secret disclosure where plaintiff's trade secrets [were] "located in the files taken by" defendant.)

Defendants' suggestion that they are unable to identify responsive materials concerning their trading strategies without turning over "*all* of Portofino's business records" is disingenuous. Defendants have already acknowledged that there are numerous discrete, identifiable categories of information that can and should be produced at this stage. For example, Defendants agreed in their January 2025 Responses and Objections ("R&Os") to produce certain of their trading strategies from October 2020; and yet, no such production has been made. Similarly, Defendants have not

---

[6] So are Defendants' citations to *Dumbo* and *Bytemark*. In *Dumbo*, plaintiff was able to provide a more detailed disclosure because (unlike here) the plaintiff knew exactly which specific software program was stolen by their former employee. 2025 WL 219063, at *2. And contrary to Defendants' description, the court in *Bytemark* actually held that plaintiff was *not* required to produce source code or other confidential information until after Defendants produced confidential material responsive to plaintiff's document requests. *See* 2022 WL 120980, at *5.

[7] Plaintiffs' Rog 3 response identifies not only its alpha research framework and simulation environments, as noted by Defendants, but also Plaintiffs' "business plans and strategies specific to the digital assets trading market, including the specific ways in which Plaintiffs planned to use its asset-neutral approach" to trade digital assets.

[8] That information lies in Portofino's own trading activities and models, which are clearly relevant and responsive to, among other requests, Plaintiffs' RFP Nos. 23-29 (seeking disclosures to show what trading and market-making services Portofino provides and on which platforms and exchanges, as well as Portofino's trading and market-making models) and which, as discussed further below, should be produced at this stage.

produced a single document related to the source code that Mr. Lancia developed for use at Portofino while he was employed at Citadel Securities,[9] or other materials in Defendants' possession belonging to Citadel Securities—despite having agreed in their R&Os to do so.[10] Plaintiffs are amenable to reasonable staged discovery, but Defendants cannot refuse to disclose information that would allow Plaintiffs to further particularize their claims while insisting that Plaintiffs provide details they cannot yet know. *See*, *e.g.*, *Rocket*, 764 F. Supp. 3d at 119 (in case involving former employees' alleged trade-secret theft, ordering more detailed disclosure from plaintiff only *after* defendants produced all of plaintiffs' documents in their possession).

Defendants' argument that Plaintiffs' supplemental Rog 3 response merely identifies "the *process of quantitative analysis*," which is "not protectible as a trade secret," misstates both the response itself and the law. A "trade secret can exist in a combination of characteristics and components" that "in unique combination, affords a competitive advantage and is a protectable secret." *Integrated Cash Mgmt. Servs., Inc. v. Digit. Transactions, Inc.*, 920 F.2d 171, 174 (2d Cir. 1990). In any event, this argument goes to the merits and is irrelevant at the discovery stage, which is not the forum for litigating protectability. *Uni-Sys.*, 2017 WL 4081904, at *4. Nor is there any merit to Defendants' baseless suggestion that Plaintiffs seek to obtain Portofino's trade secrets in order to facilitate their own "entry" into the market. Plaintiffs already operate in the crypto market,[11] and any risk Defendants hypothesize is sufficiently addressed by the Protective Order.

Finally, Defendants repeatedly misrepresent



Defendants' request seeks to impose obligations on Plaintiffs that the law does not require at this early stage of discovery and that Plaintiffs cannot satisfy without access to information in Defendants' sole possession. The Federal Rules do not permit Defendants to withhold all relevant discovery while simultaneously demanding heightened particularity from Plaintiffs. Plaintiffs have provided a sufficient, good-faith interrogatory response that appropriately anchors discovery, and will supplement that response once Defendants meet their own discovery obligations.

---

[9] During a separate arbitration proceedings in the United Kingdom,

[10] To date, Defendants have only produced 16 documents, consisting of corporate records, outdated organizational charts, and documents identifying their office locations and website. The parties have already agreed to draft search terms and custodians, and in a November 25, 2025 email, Defendants claimed they were doing so. Defendants may not now rely on a claimed desire to complete discovery "in one fell swoop" to justify withholding responsive materials and delaying their own productions. Supra n. 3.

[11] *See, e.g.*, K. Doherty & S. Natarajan, *Citadel Securities Plots Jump Into Crypto Trading After Trump's Embrace*, Bloomberg (Feb. 24, 2025), *available at* https://www.bloomberg.com/news/articles/2025-02-24/crypto-citadel-securities-plans-to-trade-digital-coins-on-exchanges.



We thank the Court for its attention to this matter.

Respectfully submitted,

David Slarskey

Application granted.  Defendants Portofino Technologies AG and Portofino Technologies USA, Inc.'s ("Defendants'") request for a pre-motion discovery conference is granted.  The Court will hold a teleconference regarding Defendants' proposed motion to compel on January 8, 2026 at 4:00 p.m.  The parties are directed to the Court's Individual Rules of Practice in Civil Cases, which are available on the Court's website.  Rule 2 of the Court's Individual Rules contains the dial-in number for the conference and other relevant instructions.  The parties are specifically directed to comply with Rule 2(C) of the Court's Individual Rules.

The Court will also address the parties' sealing request, Dkt. No. 102, at the January 8, 2026 teleconference.

The Clerk of Court is directed to terminate the motion pending at Dkt. Nos. 102 and 103.

Dated:  December 22, 2025

GREGORY H. WOODS
United States District Judge



6